[Civ. No. 15474. Third Dist. Mar. 23, 1976.]

ANDERSON UNION HIGH SCHOOL DISTRICT et al.,
Plaintiffs and Appellants, v.
JACK S. SCHREDER, as Superintendent, etc., et al.,
Defendants and Respondents;
EDWARD B. DAVIS, Defendant and Appellant.

454

**COUNSEL**

Marshall S. Mayer for Plaintiffs and Appellants.

Robert A. Rehberg, County Counsel, for Defendants and Respondents and for Defendant and Appellant.

**OPINION**

**FRIEDMAN, J.**—The federal government distributes to the states a portion of federal forest reserve revenues; these are to be spent for public roads and schools as prescribed by state law. (16 U.S.C. § 500; *King County* v. *Seattle School District No. 1* (1923) 263 U.S. 361 [68 L.Ed. 339,

44 S.Ct. 127].) California law directs distribution of forest reserve receipts among the counties in proportion to their respective shares of the total forest reserves within the state; the counties are to spend half the money for roads, half the money for schools. (Gov. Code, §§ 29481, 29484.) This lawsuit embodies a dispute over the application of Education Code section 20251, which prescribes the formula for distributing forest reserve money among school districts within the county.

According to the statutory formula, 15 percent of the educational portion may be allocated for the improvement of educational programs anywhere in the county; the remainder is to be apportioned by the county superintendent of schools, with the approval of the county board of education, among the school districts "lying within or adjacent to the United States forest reserve . . . ."[1]

The quoted language and its decisional gloss form the nub of the controversy. In *Sonora etc. School Dist.* v. *Tuolumne County Bd. of Education* (1966) 239 Cal.App.2d 824 [49 Cal.Rptr. 153], the court sustained a school district's claim to share in the money even though it was not physically contiguous to the boundary of the forest reserve; rather, the district's nearest boundary was a half-mile from the edge of the forest reserve. The court construed the word "adjacent" in section 20251 to mean neighboring or near, not requiring physical contiguity. The court declared: ". . . the facts adduced in evidence by the plaintiff [school district] to show the use of the school district by the families of employees of the forest service, and the location of the shops and headquarters of the service in the school district, are factors which can legitimately aid a court in determining that this school district is 'adjacent' to the forest reserve for the purpose of sharing in the moneys derived from it." (P. 829.)

---

[1]Education Code section 20251 declares in part: "The county superintendent of schools, with the approval of the county board of education, may allocate 15 percent of the funds from such money for use for the improvement of educational programs for students in the county. The balance of the money credited to the forest reserve account in the county school service fund from the United States Forest Reserve Fund in the State Treasury shall be apportioned by the county superintendent of schools to school districts of the county lying within or adjacent to the United States forest reserve with approval of the county board of education in a manner which shall be prescribed prior to the 30th day of June of the fiscal year next following the year in which received.

"Money apportioned pursuant to this section shall be deposited by the county auditor to the credit of the several funds as directed by the county superintendent of schools with the approval of the county board of education."

Our own court, in *Oro Madre Unified Sch. Dist.* v. *Amador County Bd. of Education* (1970) 8 Cal.App.3d 408 [87 Cal.Rptr. 250], followed the precedent of the *Sonora* case and held that a school district (Ione) was not "adjacent" to a forest reserve, for it was 14 air miles from the westernmost end of the forest reserve and had no federal employees residing there and no federal service facilities. (*Id.,* at pp. 412-413.) On the other hand, we held that the Jackson Unified School District was eligible even though it was seven and one-half air miles to the national forest land, for there were forest reserve properties, forest service employees and children of those employees within the Jackson district. (*Id.,* at pp. 412-414.) Under those circumstances we declared that the Jackson district was "adjacent" to the forest reserve.

The *Sonora* decision made it quite clear that physical location alone did not qualify a district as "adjacent;" that the combination of physical location and financial impact was the *sine qua non* of eligibility (239 Cal.App.2d at p. 830). Both decisions affirmed the power of the courts to substitute judicial determinations of eligibility for those of the county school authorities. "Whether a given school district is 'adjacent' to a national forest within the meaning of the code section is to be determined as a fact by the courts, or, in the absence of litigation, by the officials of the county having charge of the funds." (*Sonora etc. School Dist.* v. *Tuolumne County Bd. of Education, supra,* 239 Cal.App.2d at p. 828; *Oro Madre Unified Sch. Dist.* v. *Amador County Bd. of Education, supra,* 8 Cal.App.3d at pp. 415-416.)

The present declaratory relief action was filed by 10 school districts in Shasta County. Defendants are the county superintendent of schools, the county board of education, and county auditor. Large portions of Shasta County consist of federal forest reserve lands. For some years the school authorities had distributed forest reserve funds to 20 of the 33 districts within the county. These 20 districts were either within or physically contiguous to the forest reserves. Ten of the 13 noncontiguous districts brought this suit, contending that they were "adjacent" to the forest reserves under the judicial interpretation of section 20251 espoused in the *Sonora* and *Oro Madre* decisions. The trial court found that all school districts in the county were within 14 to 15 air miles of forest reserve lands; that the lumber industry was an important part of the county's economy; that a number of the districts provided schooling to children of federal forest service employees. The trial court concluded that all 33 of the county's school districts were "adjacent" to the forest reserve in the

statutory sense and that all 33 were entitled to share in the distribution of forest reserve funds. Both sides appeal.

I

The statutory interpretation of Education Code section 20251 in the *Sonora* and *Oro Madre* decisions is vulnerable to criticism and disagreement. Nevertheless, we accept it as the more preferable interpretation of a cryptic statute. We reject these decisions' assertion of unqualified power to substitute the court for the school authorities as the arbiter of eligibility. At this point, prefatory analysis of the statutory scheme is necessary.

Intracounty distribution of forest reserve money to school districts entails a two-stage process: first, identification of the eligible districts according to Education Code section 20251; second, computation of the split of funds among the eligible districts. The present litigation involves the first stage. As to the second stage, various provisions of the Education Code authorize but do not explicitly command distribution among participating districts in ratio to average daily attendance. (Ed. Code, §§ 11252, 11254, 17616.)

In terms of statutory purpose, it might be assumed that the subvention is designed to compensate school districts for tax losses caused by the federal forest reserves. The assumption is erroneous. The federal law is not designed to provide money in lieu of local taxes. (*International Paper Co.* v. *County of Siskiyou* (9th Cir. 1974) 515 F.2d 285, 289; *Trinity Independent School Dist.* v. *Walker County* (Tex. 1956) 287 S.W.2d 717; *Bartlett* v. *Collector of Revenue* (La. 1973) 285 So.2d 346.) Neither, as we view the matter, is the state law.

In the mountain counties of California variations in local conditions cause wide variations in forest reserves' impact upon the tax base of school districts. Some forest reserves supply local tax revenue drawn from the assessment of privately owned possessory interests in standing timber, minerals and recreational facilities; from pockets of privately owned lands, some of which are the sites of valuable, privately owned hydroelectric facilities. (See *Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 724-728 [96 Cal.Rptr. 379].) A forest reserve rich in natural and recreational resources might provide important property tax revenues for those school districts within or lying athwart the boundaries of the reserve. Other forest reserves, poor in natural and recreational

resources, might provide only a sparse range of privately owned possessory interests and yield little tax revenue. Ordinarily, a forest reserve does not diminish the tax base of a school district physically contiguous but completely outside the reserve's boundary. The statutory eligibility standard (i.e., a district which lies within or adjacent to a forest reserve) is unrelated to the tax gain or tax loss caused by the forest reserve's presence.

If revenue gain or loss is not the motive for subvention, a reason might be sought in school district expense attributable to the forest reserve. Here too, local variations hinder generalizations. One variable flows from physical and social features of the county which influence the residential choices of United States forest service employees. A school district some distance from the forest reserve may serve the educational needs of many such families. Another school district may have extended its boundaries to accommodate forest service families, undertaking the heavy expense of long-distance bus transportation. A district physically adjacent to the forest reserve may serve no forest service families at all. School district unification in one county may have produced territorially large districts. In other counties, a large number of relatively small districts may compete for eligibility and for a share of the forest reserve money.[2]

Cutting across these variables is a disconnected and (from this court's perspective) illogical factor: distribution among eligible school districts by the measure of average daily attendance. A forest reserve's financial impact upon a nearby district bears no relation to the district's average daily attendance. A district with a large average daily attendance receives a large share of the distribution, even though (a) its tax base may be rich in possessory interests within the forest reserve, and (b) it may educate few forest reserve children. A district with a small daily average attendance receives a small distribution, even though it educates a relatively large number of forest service children. After the selection of participating districts is made, apportionment by the measure of average daily attendance is irrelevant to forest-service-connected costs.

These considerations demonstrate that the statutory plan is poorly conceived; that its objectives are as cryptic as its eligibility standards; that it is sorely in need of legislative rationalization.

---

[2]In the *Oro Madre* case, the court considered only three school districts covering all Amador County. Here, we confront 33 school districts in Shasta County, 30 of them in active competition for a share in the distribution.

## II

The *Sonora School District* opinion points to the availability of alternate definitions of the word "adjacent," one demanding physical contiguity, the other permitting mere proximity (239 Cal.App.2d at pp. 827-829). Statutory interpretation does not offer a free choice of alternative definitions. ■ In interpreting a statutory word, the objective of the statute is a prime consideration; where a statutory word has several meanings, the court must adopt the meaning which will best achieve the statute's purpose. (*People* ex rel. *S. F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 543-544 [72 Cal.Rptr. 790, 446 P.2d 790].) Legislative history supplies another guide. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849-850 [59 Cal.Rptr. 609, 428 P.2d 593].)

In the *Sonora School District* case the court conducted no inquiry into the objectives or statutory history of Education Code section 20251. Neither did this court in the *Oro Madre* case. Commencing with a poorly conceived and cryptic statute, both courts indulged in *ex cathedra* attempts to make it workable and sensible in the particular circumstances before them. Both decisions made "adjacency" a product of two factors—physical proximity to the forest reserve and financial impact of the forest reserve. Neither decision laid down criteria for the guidance of other school authorities and other courts. Neither set forth what kind and degree of financial impact would suffice. Neither declared whether the financial impact might consist of profit as well as loss. Neither discussed the comparative potency of financial impact and physical distance as eligibility qualifications. Neither considered whether distribution by the measure of average daily attendance would fulfill the objectives perceived by the court.

■ If possible, a statute should be interpreted to produce a reasonable result; the consequences of any particular interpretation must be considered. (*Ivens* v. *Simon* (1963) 212 Cal.App.2d 177, 181 [27 Cal.Rptr. 801].) A selection of participating districts which considers the financial impact of the forest reserve is more reasonable and less anarchic than one triggered by the wayward criterion of physical location. The *Sonora* and *Oro Madre* decisions achieve the more supportable of two possible interpretations of section 20251. Although neither opinion investigated the statute's history, both reached a historically supportable result.

The statutory progenitor of section 20251 was adopted in 1907; it provided for distribution of the school share of forest reserve money in the same manner as other county school money. (Stats. 1907, ch. 277.) In 1927 the statute was amended to permit half the school share to be distributed in company with other school funds; the remaining half, upon the request of the county superintendent of schools, would be distributed to school districts "lying within or adjacent to the United States forest reserve." (Stats. 1927, ch. 96.) The 1927 law originated the geographic phraseology at issue here.

The 1927 version supplies an important clue to statutory objective. According to its terms, all the forest reserve school money was to be distributed to all districts in the county regardless of location. This command was nevertheless subject to a proviso—if and when the county superintendent of schools requested it, half the money would be distributed to districts within or adjacent to the forest reserve. The 1927 amendment expressed a legislative view that in some instances county-wide distribution was undesirable or unfair. The proviso was designed to authorize supplemental income for those districts which bore a physical relationship to the forest reserve; this supplemental income would be made available upon request of the county superintendent of schools, that is, at that official's discretion. The statute expressed no standard to guide his discretion. Implicit in the 1927 statute was the notion that school districts having a physical relationship with forest reserve lands might have special financial needs because of that relationship. The 1927 version of the statute supports the concept later advanced in the *Sonora* decision—that financial impact rather than physical location is the prime ingredient of "adjacency."

A later version of the statute extended the discretionary power of the county superintendent. It lifted the 50 percent limitation and permitted the county superintendent to remove "all or any portion" of the forest reserve money from the general, countywide distribution and devote it to those districts which lay within or adjacent to forest reserves. (Former Ed. Code, § 5184; Stats. 1943, ch. 71, p. 419.)

Although the statute was amended several more times before the 1968 enactment of its present version, additional historical analysis is unnecessary. The current statute represents a further evolution of the "need" concept, for it permits (but does not direct) 15 percent of the money to be used elsewhere in the county, the remainder to be distributed to districts bearing the described relationship with the forest reserve. Enough has

been said to demonstrate that the legislature utilized the phrase "lying within or adjacent to" as part of a statutory plan which recognized the potential of special financial need caused by the presence of a nearby forest reserve. The interpretation offered in the *Sonora* decision is supported by statutory history.

### III

██ The trial court correctly held that physical contiguity was not a requisite to district eligibility. Nevertheless, it erred in substituting its own eligibility determination for that of the county school authorities without inquiry into abuse of administrative discretion.

On the score of judicial review of the county school authorities' decision, we disagree with the *Sonora* decision and overrule our own *Oro Madre* decision. The former (239 Cal.App.2d at p. 828) declared that a district's qualification as "adjacent" was an issue of fact to be determined by the courts. The *Oro Madre* opinion (8 Cal.App.3d at p. 415) apparently took the position that adjacency was a question of statutory interpretation, thus completely within judicial control.

Section 20251 (fn. 1, *ante*) says that forest reserve money shall be apportioned "by the county superintendent of schools . . . with approval of the county board of education in a manner which shall be prescribed" by a given date. The statute's grant of primary authority to the superintendent; its secondary delegation of approval power to the county board; its direction to proceed "in a manner which shall be pre-scribed"—these three statutory elements combine to denote a delegation of administrative discretion. If the statute meant to endow the county superintendent with a ministerial, mechanical and mathematical func-tion, there would be no point in subjecting the county superintendent's selection to the approval power of the county board of education.

The delegation of administrative discretion gains significance when it is recognized that eligibility is not a product of geography alone, but a product of geography and financial impact combined. Its significance is further heightened by recognition that physical location without financial impact does not qualify a district for participation. (*Sonora etc. School Dist.* v. *Tuolumne County Bd. of Education, supra,* 239 Cal.App.2d at p. 830.)

In our excursus into statutory history, we pointed to various predecessors of section 20251, which unmistakably gave the county school superintendent discretionary authority to determine whether and to what extent the forest reserve allocation should be specially distributed to districts neighboring the forest reserve. The present statute preserves a comparable measure of administrative discretion. It reposes in the school superintendent and county board of education discretionary authority to select the school districts which, by reason of the dual factors of location and financial impact, fulfill the statutory qualification of adjacency.

■ Interpretation of a statute is ultimately a judicial function. (*Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 326 [109 P.2d 935].) From this undoubted premise the *Sonora* and *Oro Madre* decisions drew the erroneous conclusion that the statute's application in a given case is an exercise in interpretation, *ergo,* a judicial function. The office of interpretation is to define the terms of a statute, not to administer it in a given case. ■ When a statute delegates discretionary administrative authority over matters not affecting individual rights, the courts will not substitute their discretion for that of the agency. (*Rible* v. *Hughes* (1944) 24 Cal.2d 437, 445 [150 P.2d 455, 154 A.L.R. 137]; *Metropolitan Water Dist.* v. *Whitsett* (1932) 215 Cal. 400, 419 [10 P.2d 751]; 2 Cal.Jur.3d, Administrative Law, § 267; see generally, 4 Davis, Administrative Law Treatise (1958) pp. 240-258.) Neither *Sonora* nor *Oro Madre* recognized this limitation on judicial authority.

■ Discretion is abused only when the agency's action exceeds the bounds of reason, all the circumstances before it being considered. (*People* v. *Russel* (1968) 69 Cal.2d 187, 194 [70 Cal.Rptr. 210, 443 P.2d 794].) ■ The trial court erred in substituting its own determination of district eligibility for that of the county school officials. After remand the trial court should reexamine the administrative decision with a view to determining whether the school authorities abused their statutory discretion or otherwise violated section 20251.

Judgment reversed. Each party will bear its own appeal costs.

Puglia, P. J., and Evans, J., concurred.