[No. B009489. Second Dist., Div. Six. Sept. 13, 1985.]

In re the Marriage of WYLANE H. and WILLARD H. VAN DYKE.
WYLANE H. VAN DYKE, Appellant, v.
WILLARD H. VAN DYKE, Respondent.

**COUNSEL**

Robert O. Angle and Alice T. Merenbach for Appellant.

Cathleen L. Coil and R. James Westwick for Respondent.

**OPINION**

**ABBE, J.**—Wylane H. Van Dyke (now Wylane Hill) appeals from a September 4, 1984 order entered subsequent to a final judgment dissolving her

marriage to Willard H. Van Dyke. The order denied appellant's motion pursuant to Civil Code section 5124[1] seeking modification of the parties' marital settlement agreement and the interlocutory judgment of dissolution incorporating the agreement by reference.

 Appellant argues that the trial court erred in ruling that the property settlement and interlocutory judgment could not be modified to include a division of her former husband's naval pension on the ground that section 5124 was inapplicable. She asserts that the section does apply since the property settlement agreement became "final" within the period specified by the statute. We agree.

### PROCEDURAL HISTORY

Prior to the Supreme Court decision of *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728] (hereinafter *McCarty*), California community property law had established that federal military retirement pay was divisible community property to the extent it was earned during marriage. (*Henn* v. *Henn* (1980) 26 Cal.3d 323, 328 [161 Cal.Rptr. 502, 605 P.2d 10].) On June 26, 1981, the Supreme Court decided *McCarty*. It held that federal law precluded state courts from dividing military nondisability retirement pay pursuant to state community property laws. (*McCarty, supra,* 453 U.S. 210, 223-236 [69 L.Ed.2d 589, 600-602].)

In early 1982, the parties entered into a marital settlement agreement providing that the husband's naval pension was ". . . in the category of those determined to be pre-empted by Federal law and therefore, his separate property, along with his Naval credit union account and Savings Bonds accruing therefrom." The agreement specified it would be effective on January 30, 1982.

---

[1]All further statutory references are to the Civil Code unless otherwise specified. Section 5124 provides: "(a) Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983. [¶] (b) Modification of community property settlements, judgments, or decrees under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the property settlement, judgment, or decree became final, divisible community property. [¶] (c) Any proceeding brought pursuant to this section shall be brought before January 1, 1986. [¶] (d) This section shall remain in effect only until January 1, 1986, and on that date is repealed unless a later enacted statute which is chaptered before that date deletes or extends that date."

On September 8, 1982, the United States Congress enacted Public Law number 97-252, title X, entitled "Uniformed Services Former Spouses' Protection Act" (USFSPA). Section 1002 (a) of USFSPA, codified as section 1408, Title 10, United States Code, almost entirely abrogates the effect of *McCarty.* Section 1408, subdivision (c)(1), of USFSPA provides: "Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." This section became operative February 1, 1983. (U.S. Pub.L. No. 97-252, § 1006.)

Appellant challenged the validity of the marital settlement agreement in superior court proceedings on the ground that there was no effective offer and acceptance. On October 27, 1982, the trial court ruled the ". . . Property Settlement Agreement between the parties was properly executed and delivered, [and] is valid . . . ." During January 1983 the parties obtained an interlocutory judgment of dissolution of marriage incorporating by reference their marital settlement agreement and ordering the parties to carry out its terms. The final judgment of dissolution was entered on May 6, 1983.

Subsequent to the enactment of USFSPA, numerous pending California cases addressed the issue of retroactivity of the USFSPA. As the California Supreme Court has noted, "Courts of Appeal with rare unanimity, seized on FUSFSPA [federal USFSPA] to obliterate all traces of McCarty" as to cases still in the judicial pipeline. (*Aloy* v. *Mash* (1985) 38 Cal.3d 413, 421, fn. 7 [212 Cal.Rptr. 162, 696 P.2d 656] [see cases cited].) "This pretty much reduced the impact of *McCarty* to judgments which became final between June 25, 1981, the date of that decision, and February 1, 1983, the effective date of FUSFSPA." (*Aloy* v. *Mash, supra,* at p. 421.)

The California Legislature took the concept of retroactivity one step further by enacting section 5124.

## DISCUSSION

Appellant argues that the marital settlement agreement became "final" on either of two dates which fall within the period set forth by section 5124. She contends that the agreement became final on January 30, 1982, the date on which the agreement by its own terms became effective. Alternatively, she suggests that the agreement became final on October 27, 1982, the date of the court's order upholding the validity of the agreement.

Respondent argues that the marital settlement agreement merged into the interlocutory judgment and, therefore, the pertinent date to consider is be-

yond the window period provided by section 5124 based on the January 21, 1983 filing and service of the notice of entry of the interlocutory judgment.

By its terms, section 5124 applies to "[c]community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983 . . ." regardless of whether ". . . the property settlement, judgment, or decree expressly reserved the pension issue for further determination . . . ." Various meanings are ascribed to the term "final" when applied to judgments and decrees.

A judgment is the "final" determination of the rights of the parties in an action or proceeding. (Code Civ. Proc., § 577.) Yet, a judgment does not become "final" in the sense of being safe from a direct attack or review, such as by way of a new trial motion or appeal, until such judgment has been affirmed in response to a direct attack or review or the time for attacking or seeking review has expired. A judgment may be final in the above senses, but subject to modification in the trial court under a reservation of jurisdiction. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, §§ 1-2.) A judgment on the merits which is final in the sense of being free from direct attack is ordinarily protected by the doctrine of res judicata, which precludes parties from relitigating a cause of action finally determined by a court of competent jurisdiction. (See *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810 [122 P.2d 892]; *Wodicka* v. *Wodicka* (1976) 17 Cal.3d 181, 188 [130 Cal.Rptr. 515, 550 P.2d 1051].)

The language of section 5124 indicates that the term "final" as applied to judgments or decrees means "final" in sense of being free from further direct attack, regardless of any reservation of jurisdiction on the pension issue. Such interpretation is buttressed by the clear legislative intent to negate the effect of *McCarty* to the fullest extent possible. Thus, one implied legislative purpose of section 5124 is to permit modification of judgments and decrees in those instances where parties could not have sought retroactive application of the curative provisions of the USFSPA because the federal legislation was not operative before the time for direct attack had elapsed.

Interpretation of the meaning of "final" as applied to the "community property settlements" portion of 5124 poses some difficulty since the phrase has no particular meaning in the context of traditional contract law. Where a judgment or decree incorporates by reference a contract or where the effect, construction, or validity of a contract is resolved through litigation, it is the court's judgment or decree, not the contract, which becomes "final."

Respondent proposes that a community property settlement becomes "final" on the date on which the judicial judgment or decree incorporating it becomes "final." This interpretation would be contrary to sound statutory construction for two reasons. First, it frustrates the general purpose behind section 5124 since those settlement agreements which were not incorporated into a judgment or decree would seemingly not be subject to the statute. ■ Ambiguous statutory words should be interpreted to effectuate the underlying legislative intent. (See *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *Anderson Union High Sch. Dist.* v. *Schreder* (1976) 56 Cal.App.3d 453, 460 [128 Cal.Rptr. 529].) Second, the words "community property settlements" contained in section 5124 become superfluous under such interpretation. ■ As a rule, courts should avoid a construction which makes statutory words surplusage. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ Given the legislative purpose, it is more reasonable to construe section 5124 as an effort to relieve parties from community property settlements which were consummated when the provisions of the USFSPA were not yet operative and *McCarty* was the controlling law. Consequently, we interpret "community property settlements . . . which became final on or after June 25, 1981, and before February 1, 1983 . . ." as referring to those valid settlements which were entered into between the designated dates. Since the parties in this case entered into their community property settlement in early 1982, it became "final" during the period specified by section 5124.[2]

Accordingly, the court's order filed on September 4, 1984 denying appellant's section 5124 modification motion is reversed and the matter remanded.

Stone, P. J., and Gilbert, J., concurred.

---

[2]The parties do not raise and we do not address whether modification would be precluded by the constitutional prohibitions against impairment of contractual obligations, due process guarantees, or principles of res judicata.