[No. A018026. First Dist., Div. Four. Feb. 28, 1986.]

JOSEPH SWICEGOOD et al., Plaintiffs and Appellants, v.
CARL S. RUSH, as Assessor, etc., et al., Defendants and Respondents.

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

**COUNSEL**

Siegfried Hesse, Robert P. Brorby and Dodge, Reyes, Brorby, Randall & Titmus for Plaintiffs and Appellants.

John B. Clausen, County Counsel, and Dennis C. Graves, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**ANDERSON, P. J.**—This is an appeal from summary judgment granted in favor of respondents.

The parties to the action are plaintiffs Joseph Swicegood, the former principal appraiser of Contra Costa County, taxpayers R. Lyle Van Norman and Barbara Jean Orcutt, individually (hereafter appellants), and defendants Carl S. Rush, Assessor, Donald L. Bouchet, Auditor-Controller and Alfred O. Lomeli, Treasurer of Contra Costa County (hereafter respondents). This litigation involves yet another Proposition 13 dispute and concerns the determination of the correct tax base of residential properties in Contra Costa County.

In the early 1970's Contra Costa County engaged in a cyclical reappraisal of residential properties. Under this program one-fourth of all the residential property was revalued each year using the traditional periodic appraisal (physical on-site inspection) method prescribed by Revenue and Taxation Code[1] section 405.5[2] together with a sophisticated computer-assisted appraisal program (CAAP). The latter was based upon a multiple regression principle and was regarded as equivalent to the section 405.5 physical assessment technique.[3] Pursuant to this cyclical assessment procedure in the 1974-1975 tax year, about one-fourth of the county's residential property was revalued utilizing a section 405.5 periodic appraisal and CAAP, while the remaining three-fourths was neither reassessed nor revalued. In the 1975-1976 tax year (which constitutes the base year for Proposition 13 purposes), the assessor revalued the three-fourths of the county residential properties which had not been reassessed the previous year. However, because of the shortness of time and lack of personnel the usual periodic appraisal program was suspended for the 1975-1976 tax year, and the assessor, in revaluing the three-fourths of property not assessed in 1974-1975, used a simple computerized factoring procedure. The latter technique analyzed the recent property sales in homogeneous areas and used computers to determine the appropriate value increases. While there was a difference between the values of property assessed in 1974-1975 and 1975-1976, it is undisputed that the median value of residential properties on the 1975-1976 assessment roll was only about 83.2 percent, rather than 100 percent, of the 1975-1976 real full cash value.

On June 6, 1978, Proposition 13 (Cal. Const., art. XIII A) was adopted. Section 2, subdivision (a), set out that "the full cash value" mentioned in

---

[1]Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code.

[2]At the time here relevant section 405.5 provided that "The assessor shall periodically appraise all property to substantiate his judgment of its full cash value or, when provided for by law, its restricted value for uniform assessment purposes."

[3]According to the declaration of Carl Rush, conversion to this multiple regression appraisal program "required developing (gathering, expending, recording and standardizing) an extensive data base, for each parcel, including information on over 100 factors such as presence of specific improvements (e.g., swimming pools), conditions of structures, room counts, topography of land, status of landscaping, quality class, etc."

article XIII A meant "the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value . . . .'" The section further provided that "[a]ll real property not already assessed up to the 1975-76 full cash value may be reassessed to reflect that valuation." On June 24, 1978, section 110.1 was amended providing in essence that if the property has not been appraised pursuant to section 405.5, to its appropriate base value, it ought to be reappraised.[4] (Stats. 1978, ch. 292, § 27.) Pursuant to this amendment respondent Rush's predecessor in 1978 revalued the 1975 base year value of all residential property in the county up to approximately 100 percent of their March 1, 1975, full cash value. The latter revaluation was also accomplished by simple computer factoring rather than a section 405.5 appraisal. As a consequence of this 1978 revaluation, the 1978-1979 tax roll carried all residential property in the county at 100 percent of its 1975 cash value. On May 2, 1979, to correct improper assessment practices resulting from a misinterpretation of Proposition 13 the Legislature further amended section 110.1 (Sen. Bill No. 17). Accordingly, if the 1975-1976 base year value of the property had not been determined by a section 405.5 periodic appraisal, a new 1975 lien date base value was to be determined at any time until June 30, 1980. (Stats. 1979, ch. 49, hereafter SB-17.) Because respondent Rush determined that according to this amendment the 1975-1976 base year values of all residential property in the county had been, in essence, periodically appraised, he concluded that his predecessor's revaluation thereof in 1978 was incorrect; he therefore rolled back the 1975 100 percent base values appearing on the 1978-1979 roll to tax levels originally shown on the 1975-1976 tax roll (which, of course, were less than 100 percent of the 1975 full cash values).

Thereupon, on July 6, 1979, appellants filed a complaint in superior court alleging, inter alia, that respondent assessor's interpretation of the 1979 amendment was incorrect: (1) in determining the 1978-1979 tax roll by factored increases (amounting to a 35 percent increase in some neighborhoods), rather than by physical reappraisals conducted pursuant to section 405.5; and (2) in rolling back the 1978-1979 tax roll (which then reflected 100 percent of the 1975 fair market value of all property) to the original 1975-1976 tax levels without a periodic (physical) appraisal. The complaint further alleged that by reducing the 1978-1979 full cash values to the original 1975-1976 level, the assessor had made an illegal gift of public funds inasmuch as the reduction of the tax base would result in considerable loss

---

[4]Section 110.1 as amended in 1978 provided in pertinent part as follows: "(b) The value determined pursuant to subdivision (a) shall be the 'base year value.' If property has not been appraised pursuant to Section 405.5 to its appropriate base year value, 'full cash value' means the reappraised value of such property as of the base year lien date. Such reappraisals may be made at any time, notwithstanding the provisions of Section 405.61." (Correctly § 405.6; see Stats. 1978, ch. 332, § 25.)

of tax revenue to the county both in 1978-1979 and in all subsequent tax years. Consistent therewith, appellants sought a writ of mandate to compel the assessor to reappraise all real property until the June 30, 1980, deadline prescribed by the statute in order to establish uniform 1975-1976 base year values in the county, and they also sought an injunction against "rolling back" the 1978-1979 assessment roll to the values shown on the 1975-1976 assessment roll.

On January 18, 1982, respondents moved for summary judgment on the ground that assessor Rush had indeed complied with SB-17 by rolling back the 1978-1979 assessment roll to the original 1975 year values; they also alleged that the relief sought by appellants was barred by the limitation prescribed in the statute. The trial court granted respondents' motion on both grounds.

Appellants contend on appeal that by granting respondents' motion for summary judgment the trial court abused its discretion. Specifically, appellants argue that SB-17 does not constitute a statutory bar to the present action. In addition, appellants claim that even if a reappraisal after June 30, 1980, is foreclosed by SB-17, the granting of summary judgment was improper because the gist of the complaint was to restore the 1978-1979 assessment roll, rather than to reappraise the county's residential properties beyond the statutory deadline. The roll back effected by the assessor they claim was unlawful because it violated SB-17, constituted a prohibited gift of public funds (Cal. Const., art. XVI, § 6) and ran counter to the equal protection clauses of both the United States and the California Constitutions. We find these contentions lacking in merit and affirm the judgment.

## I. *Statute of Limitations*

■ We believe appellants must fail for the primary reason that the relief sought is barred by the limitation prescribed in SB-17.

Section 110.1 as amended in 1978, allowed a reappraisal of real properties without time limitation if the base value of said properties was not determined by a section 405.5 periodic appraisal. (See fn. 4, *ante.*) In reply to a general demand that both the taxpayers and the taxing public entities be saved from uncertainty with respect to their tax rights and liabilities, section 110.1 was amended in 1979 by SB-17 to set an absolute deadline for establishing the 1975 base year values of real properties. SB-17 provided that "for property which was not purchased or newly constructed or has not changed ownership after the 1975 lien date, if the value as shown on the 1975-76 roll is not its 1975 lien date base year value and if the value of that property had not been determined pursuant to a periodic reappraisal under

Section 405.5 for the 1975-76 assessment roll, *a new 1975 lien date base year value shall be determined at any time until June 30, 1980,* and placed on the roll being prepared for the current year." (§ 110.1, subd. (b) [now subd. (c)], italics added.)

That a strict deadline was established by the Legislature for any reappraisal of real properties in order to establish their 1975 base year values, is supported not only by the clear language of SB-17, but also by its legislative history. Thus, a special task force which, following the adoption of Proposition 13, was appointed to review California property taxation and to draft comprehensive implementing legislation for the new system recommended to the Assembly Committee on Revenue and Taxation that "*all 1975 base year values be established by June 1980,* and that after that date, values may change only due to change in ownership, new construction, or the 2 percent inflation change." The task force rationalized its recommendation by stating: "*A date certain for completion is needed to protect taxpayers from the uncertainty of changes in assessment. Present law allows assessors to reappraise a property indefinitely; this provision* [i.e., the new provision in SB-17] *establishes a cut-off date as a protection to the taxpayer.*" (Rep. to Leg., Task Force on Property Tax Administration, Cal.Assem. No. 723 (Jan. 22, 1979) pp. 20-21, italics added.) That June 30, 1980, is the final cutoff date for the determination of the 1975 base year values finds further support in two additional documents: (1) California's New Property Tax Assessment System, Legislative History, Summary of Provisions and Text, (Assem. Bill No. 1488, Stats. 1979, ch. 242; Sen. Bill No. 17, Stats. 1979, ch. 49, Assem. Rev. & Tax. Com. Rep. No. 741 (Jul. 16, 1979) (hereafter Assembly History)); (2) Implementation of Proposition 13, Volume I, Property Tax Assessment (Assem. Rev. & Tax. Com. Rep. No. 748 (Oct. 29, 1979) (hereafter Implementation Report)). Both of these documents emphasize that "Assessors have only until June 30, 1980 to revise any 1975 base year values." (Assembly History, p. 1; Implementation Report, p. 11.)

The evil of which appellants complain is in that the assessor had determined both the 1975 base values and the values appearing on the 1978-1979 assessment roll by factored increases rather than the statutorily required periodic appraisals; and (2) that the assessor rolled back the 1978-1979 assessment roll to the original 1975 levels without having first conducted a periodic appraisal pursuant to section 405.5. The relief sought by appellants conformed to the wrongs alleged: appellants sought a writ of mandate to compel the assessor to reappraise all real property in the county until June 30, 1980, and an injunction to prevent a roll back of the 1978-1979 values to the 1975 levels.[5] Since it clearly appears that the gist of the complaint

---

[5]The relevant portions of the complaint read as follows: "4.6 Between June 24 and August

was the assessor's failure to establish the property values pursuant to a periodic appraisal and since the relief sought by appellants (i.e., a reappraisal of the properties) is obviously barred by the statute of limitations set out in SB-17 (see discussion, *supra*), the granting of summary judgment must be upheld upon this ground alone.

■ Appellants' contention that the complaint should be deemed amended to allege that the determination of the 1978-1979 tax roll was proper and that the redress asked was a setting aside of the roll back of the 1978-1979 taxes rather than an establishment of new property values by reappraisal, cannot be accepted for three elementary reasons. One, appellants failed to show that they had moved to amend their complaint in the lower court by complying with the provisions of Code of Civil Procedure section 471.5. Two, the record lodged with the superior court demonstrates that the 1978-1979 tax assessment roll was prepared by computer factoring rather than a

---

1, 1978, when the assessment roll was delivered to the county auditor, *defendant did not physically reappraise any real property in Contra Costa County. Instead, he raised the full cash value of real property for the 1975-76 assessment roll by factored increases* designed to approximate the full cash value of such property as of March 1, 1975. This required increases of up to thirty-five percent (35%) in some neighborhoods in the county. . . . [¶] 4.8 On June 6, 1979, *defendant* issued a press release announcing that he *is prepared to 'roll back' the full cash value of all real property in the county from that shown on the 1978-79 assessment roll to that shown on the original 1975-76 assessment roll,* except for those parcels sold, constructed or changed in ownership since March 1, 1975. *Such action by defendant will be contrary to the express provisions* of Revenue and Taxation Code § *110.1(b),* quoted in paragraph 4.7 above, *since defendant will do so whether or not there has been a periodic reappraisal of each parcel for the 1975-76 assessment roll as required by statute.* . . . [¶] 4.10 In light of his announced intention to immediately 'roll back' full cash values, rather than to reappraise all property in the county to establish an equal assessment base for all persons who owned property on March 1, 1975, and who continue to own such property, any demand on defendant to comply with the mandatory duty imposed by Revenue and Taxation Code § 110.1(b) would be futile. . . . [¶] 5.1 Defendant has expended the funds of Contra Costa County, and threatens and will continue to spend such funds, for the illegal purpose of reducing the 1978-79 full cash values of property in violation of the express mandate of Revenue and Taxation Code § 110.1. . . . [¶] 5.3 Insofar as defendant reduces the full cash values as set forth in paragraph 4.8, he will waste the estate of Contra Costa County, by failing to collect taxes required by law to be collected, and will make illegal gifts of public funds to property owners whose property is deliberately undervalued contrary to law, and should be restrained and enjoined. [¶] 5.4 Notwithstanding the plain duty imposed on *defendant* by law, as set forth in paragraph 4.7, he *has wrongfully failed and refused and continues to fail and refuse to reappraise all real property in the county* to establish uniform 1975-76 full cash values pursuant to Revenue and Taxation Code § 110.1(b), *and should be compelled to do so.* [¶] 5.5 Insofar as defendant fails to implement the plain and mandatory terms of Revenue and Taxation Code § 110.1(b), he will waste the estate of Contra Costa County, by failing to collect taxes required by law to be collected, and will make illegal gifts of public funds to property owners whose property is deliberately undervalued contrary to law, and should be compelled to comply with the mandatory provisions of Section 110.1(b). . . . [¶] 6.1 Plaintiffs have not exhausted any remedies which may be provided by law because such remedies, if any, are inadequate and to do so would cause irreparable injury as set forth in paragraph 4.9, and because *it is imperative that defendant be compelled to immediately begin reappraisals if the June 30, 1980 deadline set by the 1979 Legislature is to be met.*" (Italics added.)

section 405.5 periodic assessment (i.e., the very wrong appellants allege that occurred with the preparation of the original 1975-1976 tax roll). Three, appellants' contention is tantamount to a change of the theory of the case on appeal which is forbidden. ■ As stated in *Ernst* v. *Searle* (1933) 218 Cal.233, 240-241 [22 P.2d 715], "A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant."

## II. *Correctness of "Roll Back"*

■ But even if we assume that the complaint, by its most liberal construction, could be interpreted as a prayer for restoration of the 1978-1979 assessment roll and not one for reappraisal of the properties beyond the permissible statutory time limitation, appellants still would not prevail.

While SB-17 provided that if the value of the property had not been determined for the 1975-1976 fiscal year by a periodic reappraisal pursuant to section 405.5 the property was subject to reassessment, the statute set out an important exception to the above rule. It provided that "As used in this subdivision, *a parcel of property shall be presumed to have been appraised for the 1975-76 fiscal year if the assessor's determination of the value of the property for the 1975-76 fiscal year differed from the value used for* purposes of computing *the 1974-75 fiscal year tax liability* for the property, but the assessor may rebut such presumption by evidence that, notwithstanding such difference in value, such parcel was not appraised pursuant to Section 405.5 for the 1975-76 fiscal year." (§ 110.1, subd. (b) [now subd. (e)], italics added.)

It is undisputed that the real properties in Contra Costa County had been appraised for the 1975-1976 fiscal year by computer factoring and it is also undisputed that property values determined for that fiscal year differed from the values on the previous year's (1974-1975) assessment roll. It follows that the statutory presumption arose that the real properties in the county in fact had been reappraised for 1975-1976 and as a consequence, the 1978-1979 appraisal made by respondent Rush's predecessor was improper. Since the very purpose of SB-17 was to correct the unnecessary 1975-1976 base year reappraisals,[6] respondents were justified in repealing the revaluation

---

[6]Uncodified section 4 of SB-17 sets out as follows: "This act clarifies the intent of Article XIII A of the California Constitution and Chapters 292 and 332 of the Statutes of 1978, to correct the administrative interpretation of such provisions which has resulted in the incorrect assessment of certain properties, and does not make a substantive change. *It is the intent of the Legislature that counties which have established base year values in conformity with the intent of Section 110.1* of the Revenue and Taxation Code, *as clarified by this act, shall*

of properties and restoring their previously determined value for the 1975-1976 fiscal year.

Appellants' assertion that respondent assessor should have rebutted the presumption arising under subdivision (e) of section 110.1 is not persuasive.

The record demonstrates that the computer factoring by which the revaluations were made in 1975-1976 resulted in a highly uniform valuation of a large, contiguous group of similar properties. The latter is demonstrated especially by the fact that the coefficient of dispersion (CD), the approved measure of the uniformity of assessment, was very good concerning the properties assessed.[7] It follows that respondents complied not only with the spirit, but also with the letter of SB-17 which provides in relevant part that "In determining the new base year value for that property, the assessor shall use only those factors and indicia of fair market value actually utilized in appraisals made pursuant to Section 405.5 for the 1975 lien date. *The new base year values shall be consistent with the values established by reappraisal for the 1975 lien date of comparable properties which were reappraised pursuant to Section 405.5 for the fiscal year.*" (§ 110.1, subd. (b) [now subd. (c)], italics added.)

---

*not be required to redetermine such base year values.*" (Italics added.)

Uncodified section 5 of SB-17 provides in pertinent part: "*Uncertainty exists in the determination of full cash value for the 1975-76 fiscal year, resulting in the reappraisal of property with regard to the 1975-76 fiscal year although such property had been timely appraised for the 1975-76 fiscal year* and which therefore was correctly assessed for the 1975-76 fiscal year, within the meaning of Proposition 13. *Therefore, in order to correct the 1978-79 property tax rolls to prevent undue financial hardship resulting from the erroneous tax levies for the 1978-79 fiscal year and to correct the collection of such taxes* with a minimum of administrative difficulty, *this act must go into effect immediately.*" (Italics added.)

[7]Respondent Rush's declaration in support of the motion for summary judgment reads in part: "10. For tax year 1975-76, the part of the County that was periodically appraised the previous year (1974-75) was not raised in value by either the usual periodic appraisal methods or factoring and, hence, retained the same values for the 1975-76 roll as for 1974-75. [¶] 11. A comprehensive analysis of the properties that were computer factored for 1975-76 and the properties that were not (those properties receiving the usual periodic appraisal the previous year) was made by my office. The median (middle) ratio of the ratios of roll value to estimated true value for a group of properties is the preferred measure of the level of appraisal for the properties. The coefficient of dispersion derived for the ratios of a group of properties is the preferred measure of uniformity of appraisal among the properties. The median ratio statistics of our analysis showed that the level of the properties factored for 1975-76 was nearly the same as that of the properties not raised in value for 1975-76. Critically, the analysis also showed that the coefficients of dispersion of the two groups of properties were both excellent (below 8%) and indeed were virtually identical (being within approximately 1% of each other). This accords with the State Board of Equalization Assessment Practices Survey which showed a very good overall coefficient of dispersion for this County for 1975-76. Thus, these facts demonstrate a very high degree of uniformity of assessment for this County for the 1975-76 roll. In fact, such uniformity is rarely achieved between the properties raised in value and properties not raised in value for any given year."

Further, as appellants concede, the assessor has discretion under subdivision (e) of section 110.1 to rebut the presumption arising under the statute. ■ It is, of course, well settled that when a statute delegates discretionary administrative authority over matters not affecting individual rights, the courts will not substitute their discretion for that of the administrative officer or agency (*Rible* v. *Hughes* (1944) 24 Cal.2d 437, 445 [150 P.2d 455, 154 A.L.R. 137]; *Anderson Union High Sch. Dist.* v. *Schreder* (1976) 56 Cal.App.3d 453, 463 [128 Cal.Rptr. 529]), unless a clear abuse of discretion is shown (*People* v. *Russel* (1968) 69 Cal.2d 187, 194 [70 Cal.Rptr. 210, 443 P.2d 794]). This is especially so where, as here, the subject involves technical matters within the unique expertise of the agency. ■ As stated in *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 835 [27 Cal.Rptr. 19, 377 P.2d 83], "The rendition of this regulation involved 'highly technical matters requiring the assistance of skilled and trained experts and economists and the gathering and study of large amounts of statistical data and information.' [Citation.] Under such circumstances, 'courts should let administrative boards and officers work out their problems with as little judicial interference as possible.' [Citation.] The substitution of the judgment of a court for that of the administrator in quasi-legislative matters would effectuate neither the legislative mandate nor sound judicial policy."

### III. *Miscellaneous Contentions*

■ Appellants' assertion that the roll back of the 1978-1979 assessment roll to the original 1975-1976 property values constituted an unauthorized gift of public money in violation of the California Constitution, article XVI, section 6, is unfounded. This constitutional prohibition applies only to vested rights in taxes. (*Schettler* v. *County of Santa Clara* (1977) 74 Cal.App.3d 990, 1003 [141 Cal.Rptr. 731]; *Community Television of So. Cal.* v. *County of Los Angeles* (1975) 44 Cal.App.3d 990, 993 [119 Cal.Rptr. 276].) In the case at bench the county had no vested right to the excess tax based upon the 1978-1979 tax roll because the latter was not authorized by the statute. As a consequence, the roll back of the erroneously-determined property values and a collection of taxes based upon the original 1975-1976 assessment roll cannot be deemed a prohibited gift of public money.

■ Appellants' final argument that SB-17 violates the equal protection of laws clause because it imposes disparity in treatment among pre-1975 property owners is answered by our Supreme Court in *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 233-234 [149 Cal.Rptr. 239, 583 P.2d 1281]. Therein it was held that states have great leeway in making classifications and a state tax law is not arbitrary even though it discriminates in favor of a certain class or group of people if the discrimination is founded upon a reasonable distinction. In the

case at bench SB-17 draws a reasonable line between the pre-1975 property owners based upon the presence or absence of a statutory periodic assessment conducted pursuant to section 405.5. Moreover, the disparity of treatment of the affected property owners is far less than the one approved in *Amador Valley* regarding the pre-1975 and post-1975 homeowners. ▉ It is well established that a system of taxation will be upheld despite the absence of " ' " "a precise, scientific uniformity," " ' " as long as it is supported by a rational basis and is not palpably arbitrary. (*Id.*, at p. 234; *Kahn* v. *Shevin* (1974) 416 U.S. 351, 356, fn. 10 [40 L.Ed.2d 189, 193-194, 94 S.Ct. 1734]; *Allied Stores of Ohio* v. *Bowers* (1959) 358 U.S. 522, 526 [3 L.Ed.2d 480, 484, 79 S.Ct. 437].)

In summary, since the case at bench did not present a triable issue of fact and since appellants failed to demonstrate that the trial court abused its discretion in granting summary judgment (Code Civ. Proc., § 437c, subd. (c); *Oxford* v. *Signal Oil & Gas Co.* (1970) 12 Cal.App.3d 403, 409-410 [90 Cal.Rptr. 700]; *Seltzer* v. *Seltzer* (1969) 276 Cal.App.2d 137, 144 [80 Cal.Rptr. 688]), we cannot but sustain the trial court's ruling.

In view of our conclusion the additional issues raised by the parties need not be discussed.

The judgment is affirmed.

Poché, J., and Sabraw, J., concurred.

A petition for a rehearing was denied March 26, 1986, and appellants' petition for review by the Supreme Court was denied June 26, 1986.