**EMINENCE R–1 SCHOOL DISTRICT,**
Plaintiff-Appellant,

v.

**J. D. HODGE, et al.,**
Defendants-Respondents,

and

**Bunker R–III School District, et al.,**
Intervenors-Defendants-Respondents.

No. 63042.

Supreme Court of Missouri,
Division No. 2.

June 8, 1982.

Motion for Rehearing or to Transfer to Court En Banc Denied July 6, 1982.

John Gianoulakis, Miriam C. Rogers, St. Louis, Daniel L. Moody, Van Buren, for plaintiff-appellant.

Randy P. Schuller, L. Dwayne Hackworth, Piedmont, for defendants-respondents and intervenors-defendants-respondents.

ALDEN A. STOCKARD, Senior Judge.

This is a suit by Appellant Eminence R–1 School District for declaratory judgment and injunctive relief. Eminence seeks a determination that pursuant to § 12.070, RSMo 1978,[1] it is entitled to a mandatory

---

1. *12.070. Sums received from United States shall be expended, how.*—All sums of money received from the United States under an act of Congress, approved May 23, 1908, being an act providing for the payment to the states of twenty-five percent of all money received·from the national forest reserves in the states to be expended as the legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which the forest reserve is situated (16 U.S.C.A. § 500) shall be expended as follows: Seventy-five percent for the public schools and twenty-five percent for roads in the counties in which national

distribution of forest reserve funds derived from the Mark Twain National Forest Reserve. Respondents, three Shannon County school districts that are situated wholly or partly within the national forest, contend that although Eminence is *eligible* to receive forest reserve funds under § 12.070, it is not necessarily entitled to a distribution of these funds. The trial court found that Eminence may be excluded from receiving forest reserve funds under § 12.070. The crucial issue is whether Eminence, a school district lying *adjacent to* the national forest, is entitled to a mandatory distribution of forest reserve funds under § 12.070. Because this appeal involves the construction of a state revenue statute, this Court has jurisdiction pursuant to Mo.Const.Art. V, § 3.

The facts are stipulated. Pursuant to 16 U.S.C. § 500,[2] the State of Missouri receives twenty-five percent of all revenues derived by the federal government from the Mark Twain National Forest Reserve. The state is free to apply these forest reserve funds in any manner as long as the specified purposes of the federal statute are met, namely, to benefit public schools and roads of the counties in which the national forest reserve is situated. *King County v. Seattle School District No. 1,* 263 U.S. 361, 364, 44 S.Ct. 127, 128, 68 L.Ed. 339, 341 (1923). Pursuant to § 12.070, Shannon County receives a share of the forest reserve funds based upon the proportional number of acres of the national forest located within the county. Section 12.070 mandates that seventy-five percent of the funds shall be expended for the benefit of school districts located partly, or wholly within, or adjacent to the national forest, and twenty-five percent shall be expended for the benefit of county roads within these school districts.

There are seven school districts or portions of school districts located in Shannon County. Of these, only the three respondent school districts have land within the national forest.[3] Eminence has land adjacent to, but not within, the forest.

Prior to 1977, all forest reserve funds received for the benefit of those school districts situated partly or wholly within or adjacent to the national forest were distributed based upon the proportional area of forest reserve land located within each

forests are situated. The funds shall be used to aid in maintaining the schools and roads of those school districts that lie or are situated partly or wholly within or adjacent to the national forest in the county. The distribution to each county from the proceeds received on account of a national forest within its boundaries shall be in the proportion that the area of the national forest in the county bears to the total area of the forest in the state, as of June thirtieth of the fiscal year of which the money is received.

**2.** *§ 500. Payment and evaluation of receipts to State or Territory for schools and roads; moneys received; projections of revenues and estimated payments*

On and after May 23, 1908, twenty-five per centum of all moneys received during any fiscal year from each national forest shall be paid, at the end of such year, by the Secretary of the Treasury to the State or Territory in which such national forest is situated, to be expended as the State or Territorial legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which such national forest is situated; *Provided,* That when any national forest is in more than one State or Territory or county the distributive share to each from the proceeds of such forest shall be proportional to its area therein. In sales of logs, ties, poles, posts, cordwood, pulpwood, and other forest products the amounts made available for schools and roads by this section shall be based upon the stumpage value of the timber. Beginning October 1, 1976, the term "moneys received" shall include all collections under the Act of June 9, 1930, and all amounts earned or allowed any purchaser of national forest timber and other forest products within such State as purchaser credits, for the construction of roads on the National Forest Transportation System within such national forests or parts thereof in connection with any Forest Service timber sales contract. The Secretary of Agriculture shall, from time to time as he goes through his process of developing the budget revenue estimates, make available to the States his current projections of revenues and payments estimated to be made under the Act of May 23, 1908, as amended, or any other special Acts making payments in lieu of taxes, for their use for local budget planning purposes.

**3.** Respondents are the Bunker R–III, Mountain View-Birch Tree R–9, and Winona R–3 school districts.

school district as compared to the total national forest acreage within the county. This distribution method will hereinafter be referred to as the "acreage formula." As mentioned, Eminence does not have any forest reserve land located within its boundaries, but does have forest land adjacent thereto. Consequently, Eminence received no forest reserve funds prior to 1977.

In 1977, ten percent of the funds received by Shannon County were apportioned by the acreage formula. Ninety percent of the funds were apportioned by a so-called "inverse assessed valuation formula." Pursuant to that formula, Eminence received a portion of the distribution. Needless to say, had the acreage formula been used exclusively, Eminence would have received no forest reserve funds in 1977.

The instant litigation arose when the Shannon County Court attempted to apply the acreage formula exclusively for funds received in 1978 and 1979. By stipulation of the parties, $23,000 of the funds received for the years 1978 and 1979 were paid to Eminence. It was further stipulated that $43,000, which is the object of the instant litigation, would be paid into the registry of the Circuit Court pending determination of the following issue: "Under Section 12.070 ... can National Forest Service monies be legally distributed by the Shannon County Court so as to exclude totally [Eminence], which boundaries lie adjacent to the Mark Twain National Forest?"

If the foregoing question is answered affirmatively, then the $43,000 plus accrued interest will be apportioned by the acreage formula and distributed to respondents. If the question is answered negatively, then the money will be distributed to Eminence.

The parties also requested the Circuit Court to decide the following stipulated issue for the purposes of declaratory relief only, and not being determinative of the distribution of the $43,000: "Under § 12.-070 ... does the Shannon County Court have discretion to distribute money to [Eminence] ...?" The trial court answered both stipulated questions affirmatively.

On this appeal, Eminence contends that the county court must distribute forest reserve funds to a school district, such as Eminence, that lies adjacent to a national forest reserve; hence, the trial court erred in answering the first stipulated issue in the affirmative. We disagree.

Before construing the Missouri statute, we make some initial observations about the federal statute. The pertinent part of 16 U.S.C. § 500 provides as follows:

[T]wenty-five per centum of all moneys received during any fiscal year from each national forest shall be paid ... to the State ... in which such national forest is situated, to be expended as the State ... legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which such national forest is situated ....

As mentioned previously, this provision clearly allows the states to distribute the forest reserve funds in any manner as long as the specified purposes of the statute are met, namely, to benefit public schools and roads of the counties in which the national forest is situated. *King County v. Seattle School District No. 1*, supra. It is also apparent that the funds distributed to the states are not based upon tax revenues lost due to government ownership of forest reserve lands. Thus, the federal statute cannot be viewed strictly as an in lieu of tax provision.

Although there is conflict as to whether the payments under 16 U.S.C. § 500 constitute a trust for the benefit of counties in recognition of the national interest in education and roadbuilding, *Trinity Independent School District v. Walker County*, 287 S.W.2d 717, 722 (Tex.Civ.App.1956), or an absolute grant or gift to the states, *King County v. Seattle School District No. 1*, supra, it would appear that Congress intended to aid schools and roads upon which the impact of the federal presence falls most heavily.

In light of these observations, we turn to the Missouri statute. Section 12.070 provides in pertinent part: "The funds *shall* be used to aid in maintaining the schools and

roads of those school districts that lie or are situated *partly or wholly within or adjacent to* the national forest in the county." (Emphasis added.) Eminence would argue that the use of word "shall" mandatorily requires a distribution to all eligible school districts, *i.e.*, those that are partly or wholly within or adjacent to the national forest.

The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning. *State v. Kraus*, 530 S.W.2d 684, 685 (Mo. banc 1975). Legislative intent and the meaning of words used in the statute can in many instances be found from the general purposes of the legislative enactment. *Bank of Crestwood v. Gravois Bank*, 616 S.W.2d 505, 510 (Mo. banc 1981). Another aid in ascertaining legislative intent is the rule that the entire act must be construed together and all provisions must be harmonized, if reasonably possible, and every word, clause, sentence, and section given some meaning. *City of Willow Springs v. Missouri State Librarian*, 596 S.W.2d 441, 446 (Mo. banc 1980).

At the outset we note that § 12.070 does not provide for a distribution of funds based upon the percentage of tax revenues lost by each school district. This fact coupled with the explicit inclusion of the word "adjacent" indicates to this Court a legislative intent not to provide in lieu of tax payments inasmuch as an adjacent school district does not contain forest reserve lands which could be subject to local taxation.

Thus, we find the preferable interpretation of legislative intent underlying the enactment of § 12.070 as one based upon compensation to those school districts most heavily burdened or financially affected by the presence of the national forest.

While we agree with Eminence that it is the geographical location of a school district which determines its *eligibility* for forest reserve funds, we cannot conclude that this eligibility is equivalent to an absolute right to receive a share of the funds. Although the statute uses the mandatory term "shall," the provision does not mandate a particular method of distribution. We view the use of the word "shall" as mandating the expenditure of forest reserve funds for those school districts having the proper geographic location. This does not mean that these school districts must receive something. Rather, the use of the disjunctive connector "or" after the word "within" indicates to this Court a legislative intent that the county court apportion to the eligible school districts alternatively or collectively.

Therefore, we hold that the legislative silence as to the method of distribution of forest reserve funds, and the intent of the legislature to exclude from eligibility those school districts not situated properly, indicates an intent to repose in the county court the discretion to determine the relative impact of the national forest in each eligible district and then to determine how much money each eligible district should receive. Accordingly, the county court can determine, in its discretion, that any of the eligible school districts are not in need of or entitled to receive forest reserve funds. Thus, Eminence can legally be excluded from the distribution of these funds.

Needless to say, if the county court could not in its discretion decide that Eminence *is* entitled to share in the distribution of funds, then the use of the word "adjacent" would be mere surplusage. Hence, the county court can also determine that Eminence is entitled to share in the distribution of forest reserve funds. The county court's apportionment can be disturbed only if it abused or arbitrarily exercised its discretion. *Bradford v. Phelps County*, 357 Mo. 830, 210 S.W.2d 996, 1001 (1948).

Eminence relies upon several foreign decisions, for example, *Anderson Union High School District v. Schreder*, 56 Cal.App.3d 453, 128 Cal.Rptr. 529 (1976); *Oro Madre Unified School District v. Amador County Board of Education*, 8 Cal.App.3d 408, 87

Cal.Rptr. 250 (1970), overruled on other grounds, *Anderson Union High School District v. Schreder,* supra. These decisions are inapposite inasmuch as the issue before us was not addressed.

This Court has considered the implications of two other Missouri statutes, namely, §§ 12.080[4] and 12.100, RSMo 1978.[5] The former relates to the distribution of funds derived from leases of land owned by the federal government and is clearly inapplicable to the receipt and expenditure of forest reserve funds under § 12.070.

As to § 12.100, it appears that the first sentence of that section merely reaffirms the duty of the county court to expend the funds received under § 12.070 for the benefit of schools and roads. Although the objective of the second sentence of § 12.100 is cryptic it appears to place a limitation on the county court to prevent apportionment of revenues derived under §§ 12.070–.080 for the exclusive benefit of the general revenue of the county. We conclude that neither § 12.080 nor § 12.100 dictate a particular method of distribution for funds derived under § 12.070.

The judgment is affirmed.

WELLIVER, P. J., and HIGGINS and SEILER, JJ., concur.

**4.** *12.080. County court shall direct expenditures.*—All sums of money received from the United States, or any department thereof under an act of Congress approved August 18, 1941, being an act providing for the payment to the several states of seventy-five percent of all moneys received for leases of land situated in the various states to which the United States owns fee simple title under the Flood Control Act of May 15, 1928, as amended and supplemented (33 U.S.C.A. § 701c–3), to be expended as the general assembly may prescribe for the benefit of the public schools and public roads of the county in which the government land is situated, or for defraying any of the expenses of county government in the county, including public obligations of levee and drainage districts for flood control and drainage improvements, or as provided by any acts of Congress authorizing the distribution of income or revenue from lands owned by the United States of America or any of its departments, bureaus or commissions or any agency of the United States of America, to states or counties or as provided by any amendments to those acts, shall be expended as the county court of the county entitled to receive the funds directs in accordance with the provisions and regulations provided by the acts of Congress for distribution to states and counties.

**5.** *12.100. County court to use funds in maintaining schools and roads.*—The county court of each county receiving any such moneys shall use the funds to aid in maintaining the schools and roads and for defraying any of the expenses of the county in accordance with the provision set forth in sections 12.070 and 12.-080. The county court shall allow to the school districts and for roads an amount based upon their respective levies equal to that which would ordinarily be allowed to them out of taxes for property owned by the United States if the property were privately owned before using any of the moneys for defraying other expenses of the county.