**BUNKER R–III SCHOOL DISTRICT,
et al., Appellants,**

**v.**

**J.D. HODGE, et al., Respondents.**

**No. 13195.**

Missouri Court of Appeals,
Southern District,
Division Three.

Feb. 16, 1984.

L. Dwayne Hackworth, Randy P. Schuller, Hackworth & Schuller, Piedmont, for appellants.

Bonnie Keaton, Eminence, for respondents. °

CROW, Presiding Judge.

This is the second case involving apportionment of "national forest reserve funds" among four school districts by the Shannon County Court. The first was *Eminence R–1 School District v. Hodge, et al.,* 635 S.W.2d 10 (Mo.1982), hereafter *"Hodge-1."*

16 U.S.C. § 500, as amended Oct. 22, 1976, Pub.L. 94–588, § 16, 90 Stat. 2961,[1] provides that 25 per cent of all moneys received by the United States government during any fiscal year from each national forest shall be paid to the state or territory in which such national forest is situated, to be expended as the state or territorial legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which such national forest is situated.

Inasmuch as national forest land is situated in several Missouri counties, Missouri

receives such funds. Part of the Mark Twain National Forest lies in Shannon County. Accordingly, Shannon County receives a share of the funds.

The General Assembly has ordained that counties receiving such funds shall expend 75 per cent thereof for public schools and 25 per cent for roads. § 12.070, RSMo 1978.[2] In order to be eligible to share in the 75 per cent allocated for schools, a school district must lie or be situated partly or wholly within or adjacent to the national forest in the county. § 12.070; *Hodge-1,* 635 S.W.2d at 11.

Three school districts in Shannon County lie partly within the Mark Twain National Forest: Bunker R–III ("Bunker"), Mountain View-Birch Tree R–9 ("Mountain View"), and Winona R–III ("Winona"). Another Shannon County school district, Eminence R–1 ("Eminence"), lies adjacent to the Mark Twain National Forest, but no part of the Eminence district lies within the Forest.

In *Hodge-1,* our Supreme Court faced two issues:

(1) Under § 12.070, can the forest funds be legally distributed by the Shannon County Court so as to totally exclude Eminence?

(2) Under § 12.070, may the Shannon County Court, in its discretion, distribute some portion of the forest funds to Eminence?

Holding that the construction of a state revenue statute was involved, Mo. Const. art. V, § 3, *Hodge-1,* 635 S.W.2d at 11, our Supreme Court answered both questions, "Yes."

Because § 12.070 is silent as to the method of distribution of forest funds, the Supreme Court in *Hodge-1* had to ascertain the legislative intent behind that section. The Supreme Court found the intent of the General Assembly was to compensate those school districts most heavily burdened or financially affected by the pres-

---

1. This statute is set out verbatim in *Hodge-1,* 635 S.W.2d at 11, n. 2.

2. Hereafter, references beginning with "§" are to RSMo 1978.

ence of the national forest. *Hodge-1*, 635 S.W.2d at 13. The Supreme Court held that the General Assembly intended to repose in the county court of each county receiving forest funds the discretion to determine the relative impact of the national forest on each eligible district, and then to determine how much of the money each eligible district should receive. *Id.* at 13[3]. The Supreme Court added that the county court can determine, in its discretion, that any eligible district is not in need of or entitled to receive forest funds. *Id.* The county court's apportionment can be judicially disturbed only if the county court abuses or arbitrarily exercises its discretion. *Id.* at 13[4].

The appeal now before us arises from a suit by Bunker, Mountain View and Winona ("plaintiffs") against the three judges of the Shannon County Court, the county treasurer and the county clerk ("defendants"). The suit was triggered by an order of the Shannon County Court entered August 12, 1982. That order apportioned $187,610 of forest funds between plaintiffs and Eminence.[3] Fifteen per cent thereof ($28,144) was designated "timber" funds, being attributable to revenue from timber sales. The remaining 85 per cent ($159,466) was designated "mineral" funds, being attributable to revenue from mining activities.

The timber funds were ordered distributed according to an "acreage" formula. Each district was awarded a fraction of the timber funds in which the numerator was the number of acres of national forest in that part of the district lying in Shannon County,[4] and the denominator was the total acres of national forest in Shannon County.

Obviously, Eminence was allowed no timber funds.

██ The mineral funds were ordered distributed according to an "inverse proportional ratio" formula. We do not find that formula in the pleadings or evidence, however plaintiffs' brief states that the school district with the highest assessed valuation was used as a reference so that it received one share or unit, and the other districts received that number of shares as was represented by a fraction in which the highest assessed valuation was the numerator and each other district's assessed valuation was the denominator. Defendants do not challenge that explanation of the formula. Consequently, we assume plaintiffs' explanation is correct.

The distribution in the order of August 12, 1982, was:

| School District | Timber Funds | Mineral Funds | Total |
|---|---|---|---|
| Winona | $15,570 | $79,134 | $94,704 |
| Bunker | 8,046 | 11,990 | 20,036 |
| Mountain View | 4,528 | 19,664 | 24,192 [5] |
| Eminence | 0 | 48,678 | 48,678 |
| Total | $28,144 | $159,466 | $187,610 |

Plaintiffs filed this suit the day after the order was entered, seeking a declaration that the vote and the order were illegal, void and of no force and effect, and that any attempt to disburse forest funds under the inverse proportional ratio formula was illegal and void. Plaintiffs also prayed for a temporary and permanent injunction prohibiting defendants from disbursing any forest funds pending the outcome of the suit.

---

3. Evidently, seven school districts lie wholly or partly in Shannon County, *Hodge-1,* 635 S.W.2d at 11, however the pleadings in the instant case establish that plaintiffs and Eminence are the only school districts in that County eligible for forest funds.

4. Although not fully developed in the record, it is evident that the Bunker district includes areas of at least two other counties besides Shannon. The same is true of the Winona district. The superintendents of those two districts testified

that their respective districts each contain national forest land in three counties. Apparently all of the national forest in the Mountain View district lies in Shannon County.

5. The County Court's order shows that the timber funds and mineral funds apportioned to Mountain View total $24,189, but that appears to be a mathematical error. The timber funds ($4,528) plus the mineral funds ($19,664) equal $24,192, the figure shown above.

The trial court entered a temporary restraining order as prayed. In due course, the cause was tried to the court, and thereafter the court entered its conclusions of law and judgment. The court ruled that the Shannon County Court can determine in its discretion that any eligible school district is entitled to receive forest funds, and that no particular method of distribution is mandated. The trial court added that it could not find, as a matter of law, that the formula for distribution by the Shannon County Court amounted to an abuse or an arbitrary exercise of discretion. The trial court denied plaintiffs' prayer for an injunction and ordered the action dismissed. This appeal followed.

■ The first issue we confront is whether we have jurisdiction. We must decide that issue even though neither side has challenged our jurisdiction. *In re Estate of DeWitt*, 591 S.W.2d 273, 275[1] (Mo. App.1979); *Kansas City v. Howe*, 416 S.W.2d 683, 686[3] (Mo.App.1967).

■ The Supreme Court of Missouri has exclusive appellate jurisdiction in all cases involving the construction of the revenue laws of this state. Mo. Const. art. V, § 3; *Noranda Aluminum, Inc. v. Missouri Department of Revenue*, 599 S.W.2d 1, 1–2[1] (Mo.1980). As observed earlier, our Supreme Court in *Hodge-1* held that the issues there involved the construction of a Missouri revenue statute (§ 12.070). *Hodge-1*, 635 S.W.2d at 11.

■ Here, however, by reason of the manner in which we resolve this appeal, construction of the revenue laws is not involved, and as there is no other basis on which jurisdiction of this appeal would lie in the Supreme Court, we have jurisdiction. Mo. Const. art. V, § 3.

As noted earlier, Eminence receives $48,-678 under the order of August 12, 1982. The superintendent of the Eminence district was present when the Shannon County Court voted on that apportionment, and the superintendent heard the figures as they were read. Eminence was apparently satisfied, because, so far as the record shows, Eminence—unlike plaintiffs—took no action to challenge the order. However, should we agree with plaintiffs that the order is invalid, the county court would have to reconsider apportionment of the forest funds, in which event Eminence could receive more, less, the same amount, or nothing. Consequently, Eminence may be substantially affected by the outcome of this litigation, depending, of course, on what the outcome is.

Plaintiffs did not name Eminence as a defendant, and Eminence is not now, and never has been, a party to this cause.[6] Nothing in the record suggests that defendants raised any issue about the absence of Eminence in the trial court, and defendants have not done so here.

■ Nonetheless, it has been held that the absence of a necessary party to an action is fundamental and jurisdictional to such an extent it must be considered by an appellate court. *Shepherd v. Department of Revenue*, 377 S.W.2d 525, 528 (Mo.App. 1964). Accordingly, we inquire *sua sponte* whether Eminence is a necessary party.

■ Rule 52.04(a)[7] provides, in pertinent part, that a person shall be joined in the action if "... he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest...." Such a party is a necessary party. *Kingsley v. Burack*, 536 S.W.2d 7, 12 (Mo. banc 1976).

■ The subject of this action is, of course, $187,610 in forest funds, and Eminence presumably claims an interest therein (the $48,678 apportioned to it in the order of August 12, 1982).[8] A final judg-

---

6. Eminence was the plaintiff in *Hodge-1;* Bunker, Mountain View and Winona were all parties to that suit.

7. Rule references are to Missouri Rules of Civil Procedure (13th ed. 1982).

8. The superintendent of the Eminence district testified that prior to August 12, 1982, he told

ment vacating the order of August 12, 1982, would obviously impair, indeed destroy, Eminence's ability to protect its interest in the allocation granted by that order. It thus appears that Eminence is a necessary party.

An analogous case is *School Dist. No. 24 of St. Louis County v. Neaf,* 347 Mo. 700, 148 S.W.2d 554 (1941). There, a school district sued the county assessor, collector and treasurer, seeking to have a statute declared unconstitutional. Under that statute, the mains, pipes and conduits of a privately owned water company were to be treated as personalty for taxation purposes, and were to be taxed where situated. The company's plant was located in the school district, but the mains, pipes and conduits ran outside the district. The school district contended the mains, pipes and conduits, being attached to the plant, should be taxed as realty at the plant site. The school district sought to enjoin the defendants from treating such property in the manner the statute required.

The Supreme Court in *Neaf,* noting that if the mains, pipes and conduits were taxed as personalty, the taxes would go to the municipalities and school districts where those items were located, held that such municipalities and districts were necessary parties.

The plaintiff school district in *Neaf* argued that the only necessary parties were the officials charged with the duty of assessing and collecting the taxes. The Supreme Court dismissed that argument, observing that the named defendants had no interest in the subject matter in controversy, but the other school districts and municipalities did, and if the plaintiff school district were successful, the judgment would operate through the named defendants upon the other school districts and municipalities as much so as if they had been parties. By the same rationale, the Supreme Court held the water company was also a necessary party, inasmuch as the

outcome would affect the amount of its tax liability. The Supreme Court reversed the trial court's judgment (which had been adverse to the plaintiff district) and remanded with directions to allow the plaintiff a reasonable time to add the necessary parties if it desired.

The same analysis was earlier applied in *School Dist. No. 4 v. Smith,* 90 Mo.App. 215 (1901), a suit by a school district to enjoin a county clerk from changing the boundary between it and another district, and from transferring school taxes of certain taxpayers to the other district. The other district was not named as a party. The trial court's order sustaining the defendant's demurrer to the petition was affirmed.

Here, though the subject of the action is forest funds rather than the character and tax situs of property (*Neaf*), or the location of a school district boundary (*Smith*), the principle is identical. The defendants have no interest in the funds, but only the duty to distribute them in compliance with law. The entities interested in the distribution are the eligible school districts. If this litigation results in the order of August 12, 1982, being set aside, it is Eminence, not defendants, that will feel the financial effect. Consequently, we hold that Eminence is a necessary party as defined by Rule 52.04(a).[9]

Having made that determination, we must decide what to do about Eminence's absence.

■ If one who is not a party to an action is found to be a necessary party under Rule 52.04(a), and it is feasible to join him, he must be joined. *Kingsley,* 536 S.W.2d at 13[6]. There was, of course, no determination by the trial court regarding whether it is feasible to join Eminence, as the issue never arose there. On the record before us, there appears to be no reason why Eminence cannot be joined; however, it would be premature for us to decide that

the county court "that if they cut Eminence out I would recommend our Board go further litigation."

9. We do not imply that defendants are not necessary parties. Obviously, they are.

now. That question must be addressed by the trial court on remand.

The judgment is reversed and the cause is remanded. The trial court is directed to determine whether Eminence can be made a party. If so, the trial court shall not allow the action to proceed unless Eminence is added. If Eminence cannot be made a party, the trial court shall determine under Rule 52.04(b) whether this action should proceed among those already parties, or be dismissed. *Kingsley,* 536 S.W.2d at 12[5]. Said another way, if Eminence cannot be joined, the trial court must decide whether Eminence is an indispensable party. Rule 52.04(b); *Massey v. Long,* 608 S.W.2d 547, 551[5] (Mo.App.1980).

So ordered.

GREENE, C.J., and FLANIGAN, MAUS and PREWITT, JJ., concur.