**BUNKER R–III SCHOOL DISTRICT, Mountain View-Birch Tree R–9 School District, and Winona R–III School District, Plaintiffs-Respondents,**

**v.**

**J.D. HODGE, Reber Keeling, and Jerry Dailey, Judges of the Shannon County, Missouri, Court, Donald D. Searcy, Treasurer of Shannon County, Missouri, Mae Ruth Meade, County Clerk of Shannon County, Missouri, Eminence R–I School District, Defendants-Appellants.**

No. 14093.

Missouri Court of Appeals,
Southern District,
Division Three.

March 11, 1986.

Motion for Rehearing and to Transfer
Denied April 1, 1986.

Application to Transfer Denied
May 13, 1986.

Bonnie G. Keaton, Eminence, David R. Orzel, Farmington, for defendants-appellants.

Lindal D. Hackworth, Piedmont, for plaintiffs-respondents.

MAUS, Judge.

On August 12, 1982, the County Court of Shannon County entered an order apportioning and distributing "national forest reserve funds" among four school districts. Three of those districts brought this action against the county court to declare the apportionment invalid and enjoin the distribution of those funds. The first trial court denied the relief sought. Upon appeal the judgment was reversed and the cause remanded for joinder of an additional school district. *Bunker R–III School Dist. v. Hodge*, 666 S.W.2d 20 (Mo.App.1984). Upon remand there was a change of judge. The cause was submitted upon the record of the previous trial and the second trial court granted the relief sought. The county court and the additional school district appeal.

A detailed preliminary statement of the facts is not necessary for the disposition of this appeal. A thorough and complete statement of the applicable statutes and the facts may be found in *Eminence R–1 School Dist. v. Hodge*, 635 S.W.2d 10 (Mo. 1982) and *Bunker R–III School Dist. v. Hodge, supra*. For a sketch of the pertinent facts, liberal use has been made of the latter opinion with grateful acknowledgment to Judge Crow.

Section 12.070, RSMo 1978, governs the distribution of the national forest reserve funds. Those funds received by the state are distributed to the counties in the proportion that the area of the forest in each county bears to the total area of the forest in the state. That statute directs that in each county those funds shall be expended as follows: 75 percent for the public schools and 25 percent for roads in the county. It more specifically states "[t]he funds shall be used to aid in maintaining the schools and roads of those school districts that lie or are situated partly or wholly within or adjacent to the national forest in the county." § 12.070.

Three school districts in Shannon County lie partly within the Mark Twain National Forest: Bunker R–III ("Bunker"), Mountain View-Birch Tree R–9 ("Mountain View"), and Winona R–III ("Winona"). Another Shannon County school district, Eminence R–1 ("Eminence"), lies adjacent to the Mark Twain National Forest, but no part of the Eminence district lies within the Forest.

For the year in question, the county court determined 15 percent of the funds were from sale of timber and 85 percent from mineral activity. The timber funds were distributed under an "acreage" formula. Those funds were allocated upon the ratio of the number of forest acres in the school district to the total number of forest acres in the county. A judge of the county court testified the timber funds were distributed on that basis to exclude Eminence because only Eminence received $2,800 by reason of the Scenic Riverways allocation.

The mineral funds were allocated under what the witnesses cryptically referred to as "based on valuation, inverse valuation." Without further explanation, it was said that formula had been adopted by the county court four years ago. The details of that formula were not further developed in the evidence. In *Bunker* it was observed,

> plaintiff's brief states that the school district with the highest assessed valuation was used as a reference so that it received one share or unit, and the other districts received that number of shares as was represented by a fraction in which the highest assessed valuation was the numerator and each other district's assessed valuation was the denominator.

*Bunker R-III School Dist. v. Hodge,* supra, at 22. The respondents' brief on this appeal contains a similar reference in a footnote. As in *Bunker,* that reference is not challenged. It may be assumed to be correct. However, that reference does not comport with testimony that the formula was prepared to "take care of specifically

the Winona School since they had the most acreage, the largest amount of money."

The distribution in the order of August 12, 1982, was:

| School District | Timber Funds | Mineral Funds | Total |
|---|---|---|---|
| Winona | $15,570 | $79,134 | $94,704 |
| Bunker | 8,046 | 11,990 | 20,036 |
| Mountain View | 4,528 | 19,664 | 24,192 |
| Eminence | 0 | 48,678 | 48,678 |
| Total | $28,144 | $159,466 | $187,610 |

As stated, plaintiffs Bunker, Mountain View and Winona by their petition alleged the distribution on the basis of the inverse assessed valuation formula was invalid. The second trial court agreed.

■ Eminence has filed a motion that this appeal be transferred to the Supreme Court. It asserts jurisdiction is in that court because disposition of this appeal involves the construction of a revenue law within the meaning of Mo. Const. Art. V, § 3, (amended 1982). However, that constitutional provision does not require transfer when the revenue law has been construed and an appeal can be disposed of by the application of that construction. *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888 (Mo. banc 1978); *Browning-Ferris Ind. of Kansas City v. Dance,* 671 S.W.2d 801 (Mo.App.1984). The application of the construction of § 12.070 in *Eminence,* answers the issues presented. Cf. *Bunker R-III School Dist. v. Hodge,* supra. The motion is denied.

This appeal is marked by the fact one trial court denied and a second trial court granted the relief sought upon the basis of the same record. The first trial court determined it could not find "as a matter of law, that the formula for distribution by the County Court amounted to an abuse or an arbitrary exercise of the County Court's discretion." The second judgment, from which this appeal was taken, was premised upon a finding "the evidence fails to show that the Defendant, Shannon County Court, made a determination of the relative impact of the national forest in each eligible school

district." The contrast between those findings demonstrates the legal concepts that are determinative of this appeal. The decisive concepts are the function of the county court in entering the order of August 12, 1982, the scope of the review of that order by the circuit court, and the recognition of the party bearing the burden of proof upon that review. The parties did not proceed upon the basis of those concepts. This is demonstrated by the allegation of the plaintiffs' petition that the order of August 12, 1982, was entered without notice to and the opportunity of any of the plaintiffs to present evidence. It is also illustrated by the presentation of much testimony dealing with what, in the absence of collusion or fraud, are immaterial issues. Such evidence includes the following: who prepared the inverse valuation formula; who was expressly invited to have an input on the order of distribution; and the time at which one of the county judges made up his mind to vote for the distribution in question.

Under the Constitution of 1945, as amended, the county court is not a judicial court. *Hedges v. County Court for Ray County,* 581 S.W.2d 73 (Mo.App.1979). It is now denominated the County Commission. § 49.010, RSMo Cum.Supp.1984 (effective 1–1–85). In some instances that body may exercise legislative power, but in general it functions as an administrative agency. See *State ex rel. McNary v. Hais,* 670 S.W.2d 494 (Mo. banc 1984). Where judicial review is not provided by a special statute, statutory judicial review of its action may be provided by § 49.230 (appeal) (amended RSMo Supp.1985 (effective 1–1–85)), § 536.100 (review of contested cases), or § 536.150 (review of non-contested cases). *Hedges v. County Court for Ray County,* supra. Cf. Rule 100.01.

This action does not fall within the purview of any of those statutes. It is not an appeal from an order of the county court of a quasi-judicial nature affecting private rights as those terms were used in § 49.-230. See *State ex rel. McNary v. Hais,* supra; *Hedges v. County Court for Ray County,* supra. Nor is the order in question a final decision in a "contested case" subject to review under § 536.100. See *City of Richmond Heights v. Bd. of Equalization,* 586 S.W.2d 338 (Mo. banc 1979). Nor is it subject to review under § 536.150. It is inconceivable the legislature intended this function of county government to be subject to the de novo type of judicial review provided by § 536.150. See *Long v. Bates County Memorial Hosp.,* 667 S.W.2d 419 (Mo.App.1983); *Phipps v. School Dist. of Kansas City,* 645 S.W.2d 91 (Mo.App. 1982). For example, see *Cox Chapel Sch. Dist. No. 4 v. Atchison Co. Sup. of Sch.,* 429 S.W.2d 348 (Mo.App.1968). However, it is not necessary to decide if review under § 536.150 is inapplicable for other reasons. It is sufficient to observe, "[t]his section clearly comprehends only decisions involving individual rights and interests." *May Department Stores Co. v. State Tax Commission,* 308 S.W.2d 748, 756 (Mo.1958). Also see *State ex rel. Brentwood School District v. State Tax Commission,* 589 S.W.2d 613 (Mo. banc 1979); *State ex rel. St. Francois C.S.D. R–III v. Lalumondier,* 518 S.W.2d 638 (Mo.1975). The order of August 12, 1982, was not such a decision.

The plaintiffs' assertion of the invalidity of that order is cognizable only as an attack upon the basis of common law principles by an action for a declaratory judgment and injunction. Upon such an attack "the county court's exercise of its discretion in the performance of its statutory and discretionary duty should not be interfered with, vacated or set aside, except in a case where it is clear the county court in acting abused or arbitrarily exercised its discretion ...." *Bradford v. Phelps County,* 357 Mo. 830, 210 S.W.2d 996, 1001 (1948). An order is not an abuse of discretion if it is "reasonably doubtful or fairly debatable", Cf. *Sears v. City of Columbia,* 660 S.W.2d 238, 246 (Mo.App.1983), or the evidence does not preclude some rational basis for that action. *Moore v. Custis,* 736 F.2d 1260 (8th Cir.1984). The plaintiffs had the

burden of proof to establish the order of August 12, 1982, was such an abuse of discretion. *Vorbeck v. Schnicker*, 660 F.2d 1260 (8th Cir.1981), cert. denied, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982); *State ex rel. Sayad v. Zych*, 642 S.W.2d 907 (Mo. banc 1982); *Sears v. City of Columbia, supra.*

The Supreme Court recognized the limited nature of judicial inquiry concerning the order of apportionment and the burden of proof upon the plaintiffs by citing *Bradford v. Phelps County, supra*, in *Eminence*, at 13. The order of August 12, 1982, may be compared to the administrative action reviewed in *State ex rel. Sayad v. Zych, supra*, and in *Drey v. McNary*, 529 S.W.2d 403 (Mo. banc 1975).

In *Eminence*, it was declared that § 12.-070 "indicates an intent to repose in the county court the discretion to *determine the relative impact of the national forest* in each eligible district and then to determine how much money each eligible district should receive." *Eminence*, at 13 (emphasis added). Seizing upon the emphasized phrase, the plaintiffs stress the adverse effects of having portions of the national forest within their boundaries, primarily the loss of assessed valuation. Somewhat ironically they argue that a low assessed valuation of a district, the inverse valuation formula, has no relevancy in measuring that relative impact. The plaintiffs seem to have proceeded upon the basis that loss of income is the only factor relevant to that determination.

One definition of "impact" is "the force of impression of one thing on another: an impelling or compelling effect." Webster's New Collegiate Dictionary (1977). That definition seems appropriate to the sense in which the word "impact" was used in *Eminence*. It follows that determination of relative impact must consider factors in addition to the loss of assessed valuation or loss of income. This is made clear by the mandate of *Eminence* in declaring Eminence an eligible district. It is obvious that such determination must include consideration of additional expenses resulting from the presence of the national forest.

There was evidence that in at least two of the districts, pupils included children of parents employed in the national forest. Momentary reflection suggests this factor could directly and indirectly require additional expenditures in many categories. Such expenditures could include additional equipment, an additional class, an extra teacher, etc. The expense of those additional pupils is in whole or in part offset by state aid which in part is based upon an inverse valuation formula. *State ex rel. Independence Sch. Dist. v. Jones*, 653 S.W.2d 178 (Mo. banc 1983). The factors touched on in the evidence and those mentioned in this opinion merely serve to demonstrate that a precise calculation of the adverse financial effect of the national forest upon an eligible district would require statistics of those and a host of other factors. The determination of the interaction of all those factors would demand a calculation of great intricacy.

Further, the term "relative impact" carries with it consideration of the ability of a district to absorb or withstand the adverse effects of a combination of loss of income and additional expense. For illustration, it may be assumed that by reason of the national forest, each district had a net deficit resulting from loss of income and/or extra expense of $20,000. The consequences of such a deficit is greater upon a district with an income of $300,000 than upon a district with an income of $2,000,-000. Logic dictates that in determining the "relative impact" of the national forest, there must be considered not only loss of income and additional expense, but need. Indeed, the Supreme Court's construction of § 12.070 seems to expressly authorize this consideration. "Accordingly, the county court can determine, in its discretion, that any of the eligible school districts are not *in need* of or entitled to receive forest reserve funds." *Eminence*, at 13 (emphasis added).

The legislature could have provided for the distribution of the forest funds by an inflexible prescribed formula. Its failure to do so indicates an intent the county court shall have broad discretion in making that distribution. See *State ex rel. Arrington v. Board of Sup'rs of Perry County,* 221 Miss. 548, 73 So.2d 169 (1954), in which that Supreme Court said the failure of the legislature to prescribe a formula by which forest funds for roads would be apportioned upon a mileage basis indicated the court was without authority to impose that requirement.

█ If the county court is required to distribute the forest funds upon the basis of a mathematical computation, it would be a contradiction to say that body has discretion in distributing those funds. Had the Supreme Court construed § 12.070 to require such a distribution it could have so stated. Instead it emphasized the grant of such discretion and declared, "[t]he county court's apportionment can be disturbed only if it abused or arbitrarily exercised its discretion." *Eminence,* at 13. In the exercise of this discretion, the county court may consider the factors involved and assign the weight to be given to each. The distribution ordered may be disturbed only if the power of the county court has been capriciously exercised or if the relationship of that distribution to the factors involved is not fairly debatable.

Further, the plaintiffs have not suggested a mathematical equation which takes into account the factors of loss of income and additional expense in determining relative impact. Even if the funds are to be distributed upon the basis of only loss of income and expense, the evidence does not develop the existence or extent of those factors in each of the districts. The fact the forest funds were distributed under an inverse valuation formula does not per se establish the county court abused or arbitrarily exercised its discretion in distributing those funds in the order of August 12, 1982. Cf. *Everett v. County of Clinton,* 313 Mo. 460, 282 S.W.2d 30 (1955).

The plaintiffs did not present sufficient evidence to carry their burden of proof to establish that the ordered distribution is not fairly debatable within the mandate of *Eminence.* *Vorbeck v. Schnicker, supra.* The judgment of the trial court is reversed.

CROW, P.J., and FLANIGAN, J., concur.