OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



July 18, 2000

The Honorable Donna J. Gordon
Houston County Attorney
100 North 6th, Suite 105
Crockett, Texas 75835

Opinion No. JC-0253

Re: Whether "area encompassed" by a school district in section 130.906 of the Local Government Code refers to the total area of the district or the portion of the district that includes a national forest (RQ-0170-JC)

Dear Ms. Gordon:

Section 130.906 of the Local Government Code requires the commissioners court of a county in which a national forest is located to allocate national forest revenues the county receives to school districts in proportion to the "area encompassed by each district." TEX. LOC. GOV'T CODE ANN. § 130.906 (Vernon 1999). You ask whether "area encompassed by each district" refers to the total area of the school district or only to that portion of the district containing a national forest. We conclude that "area encompassed by each district" refers to the total area of the school district in the county.

Section 130.906 of the Local Government Code provides as follows:

> The commissioners court of a county *in which a national forest is located* and that receives funds from the federal government under 16 U.S.C. Section 500 shall allocate 50 percent of the funds *to the school districts of the county* in proportion to the *area encompassed by each district* and shall either allocate the remaining 50 percent for the benefit of the public roads in the county or transfer that amount to the school districts.

*Id.* § 130.906 (emphasis added). Section 130.906 is the nonsubstantive codification of former article 2351b-4 of the Revised Civil Statutes.[1] *See* Act of Mar. 1, 1945, 49th Leg., R.S., ch. 19, § 1, 1945

---

[1] Article 2351b-4 provided as follows:

> Whereas Congress has heretofore passed a law which provides that

(continued...)

Tex. Gen. Laws 29, *repealed by* Act of May 1, 1987, 70th Leg., R.S., ch. 149, §§ 1, 51, 1987 Tex. Gen. Laws 707, 874, 1308 (nonsubstantive codification of article 2351b-4 at Local Government Code section 130.006); Act of Feb. 21, 1989, 71st Leg., R.S., ch. 1, § 23(a)(1), 1989 Tex. Gen. Laws 1, 25 (renumbering section 130.006 to 130.906). You ask about the correct construction of "area encompassed by each district" in section 130.906 because of conflicting 1954 and 1947 attorney general opinions construing the term "area" in former article 2351b-4. *Compare* Tex. Att'y Gen. Op. No. S-121 (1954), *with* Tex. Att'y Gen. Op. No. V-93(1947).

As a threshold matter, we note that 16 U.S.C. § 500, the federal law pursuant to which a county receives the national forest revenues, does not direct the manner in which the federal funds are to be allocated to school districts. *See* 16 U.S.C. § 500 (1994); *see also King County v. Seattle Sch. Dist. No. 1*, 263 U.S. 361, 364-65 (1923) (the federal act does not direct the division of the revenues between schools and roads "and the moneys granted by the United States are assets in the hands of the state to be used for the specified purposes as it deems best."). Section 500 provides in pertinent part as follows:

> [T]wenty-five per centum of all moneys received during any fiscal year from each national forest shall be paid, at the end of such year, by the Secretary of the Treasury to the State or Territory in which such national forest is situated, *to be expended as the State or Territorial legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which such national forest is situated: Provided*, [t]hat when any national forest

---

[1](...continued)

> thereafter twenty-five per centum (25%) of all moneys received during any fiscal year from each national forest shall be paid at the end thereof by the Secretary of the Treasury to the State or Territory in which said forest is situated to be expended as the State or Territorial Legislature may prescribe for the benefit of the public schools and the public roads of the county or counties in which the national forest is situated, and whereas the Legislature of the State of Texas has not prescribed any method for prorating said funds, now, therefore, be it enacted that the Commissioners Courts of the counties in Texas in which such national forests are situated are hereby authorized to prorate all such funds received and to be received from the Federal Government for timber and all other income derived from such lands as follows:

> Fifty per cent (50%) of such money received shall be allocated to the school districts in proportion to the area in said districts, and fifty per cent (50%) of same to the county for the benefit of the public roads in said county. Provided the Commissioners Court may transfer the fifty per cent (50%) received by said Court to the school districts.

Act of Mar. 1, 1945, 49th Leg., R.S., ch. 19, § 1, 1945 Tex. Gen. Laws 29.

is in more than one State or Territory or county the distributive share to each from the proceeds of such forest shall be proportional to its area therein. . . . The Secretary of Agriculture shall, from time to time as he goes through his process of developing the budget revenue estimates, make available to the States his current projections of revenues and payments estimated to be made under the Act of May 23, 1908, as amended, or any other special Acts making payments in lieu of taxes, for their use for local budget planning purposes.

16 U.S.C. § 500 (1994) (emphasis added). Nothing in section 500 indicates a congressional intent that the revenues be allocated on the basis of the national forest area in a school district. *See id.; King County*, 263 U.S. at 364-65; *see also Trinity Indep. Sch. Dist. v. Walker County*, 287 S.W.2d 717, 722 (Tex. Civ. App.–Galveston 1956, writ ref'd n.r.e.) (federal law does not evidence intent to limit revenues to school districts that contain national forests); *Eminence R-1 Sch. Dist. v. Hodge*, 635 S.W.2d 10, 12 (Mo. 1982) (Federal "provision clearly allows the states to distribute the forest reserve funds in any manner as long as the specified purposes of the statute are met, namely, to benefit public schools and roads of the counties in which the national forest is situated."); Ariz. Att'y Gen. Op. No. I89-032 (1989)1989 WL 26690 (disproportionate amount of forest reserve funds may be allocated between public schools and public roads so long as both categories receive benefit and concurring that state statute does not limit funds to school districts in which forest reserves are located). Rather, section 500 leaves the manner of allocating the federal revenues to school districts to the state.

Because federal law is not controlling, we begin our analysis by looking at the express language of section 130.906 of the Local Government Code. In construing a statute, our primary objective is to give effect to the legislature's intent. *See Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). To give effect to legislative intent, we construe a statute according to its plain language. *See RepublicBank Dallas, N. A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985); *Bouldin v. Bexar County Sheriff's Civil Serv. Comm'n*, 12 S.W.3d 527, 529 (Tex. App.–San Antonio 1999, no pet.). In doing so, we may not insert additional words into a statute unless it is necessary to effect a clear legislative intent. *See Bouldin*, 12 S.W.3d at 529. Furthermore, the meaning of section 130.906's statutory predecessor is not necessarily controlling. *See Fleming Foods, Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) ("directive to the Legislative Council [in connection with codification of statutes] to refrain from changing the sense, meaning, or effect of a previous statute [may not] be used as a basis to alter the express terms of a code that the Legislature enacts as law, even when the Council's language does change the prior, repealed law.").

By its terms, section 130.906 requires allocation to a school district in proportion to the total area of the school district in the county. First, it establishes that all school districts of the county are eligible for allocation of the federal revenues: The statute directs a county that receives the funds to allocate fifty percent *"to the school districts of the county,"* not school districts of the county

*containing national forest lands.* TEX. LOC. GOV'T CODE ANN. § 130.906 (Vernon 1999) (emphasis added). Second, when the statute apportions the allocation *among* school districts, it does not do so with reference to forest lands. Section 130.906 requires allocation "in proportion to the *area encompassed by each district.*" *Id.* (emphasis added). "Each district" here can only refer back to the preceding phrase "school districts of the county" eligible to receive the allocation, *i.e.*, all school districts of the county. Additionally, "area" of each school district of the county is not restricted to the *national forest* area encompassed by each district. *See id.* (emphasis added). To read section 130.906 to require allocation in proportion to the national forest area in a school district would require inserting additional words, *i.e.*, "containing national forest," qualifying "school districts of the county" eligible for the allocation or "national forest" qualifying "area encompassed by each district" for the purposes of apportioning the allocation among the eligible school districts. But nothing in section 130.906 indicates a "clear" legislative intent to allocate or apportion revenues on the basis of the national forest area in a school district that would justify inserting these additional words. *See Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex. 1994) (if statutory language is unambiguous, court must seek legislative intent as found in plain and common meaning of words and terms used).

If the legislature intended that the federal revenues be allocated on the basis of the national forest area in a school district, it would have so expressly provided, as it has in section 403.101 of the Government Code. Under section 403.101, allocation of flood control lease revenues received from the federal government pursuant to 33 U.S.C. § 701c-3 is limited to political subdivisions that contain federally acquired flood control land and is based on the area of such land within the political subdivision. *See* TEX. GOV'T CODE ANN. § 403.101 (Vernon 1998). Section 403.101 provides in pertinent part as follows:

> (a) The comptroller may receive and give receipt for money due or payable under 33 U.S.C. Section 701c-3 (1986).

> (b) Each person having the duty to collect school or road taxes for a school district, county, or other political subdivision all or part of which is within a flood control district or . . . area . . . shall prepare and file with the comptroller a sworn report showing:

> (1) the total number of acres acquired by the United States for flood control purposes *within the boundaries of the school district, county, or other political subdivision;* and

> (2) the tax rate for each $100 of valuation for school and road purposes levied by the school district, county, or other political subdivision for the year in which the report is made.

> (c) On or before September 15 of each year the comptroller shall pay to a school district, county, or other political subdivision the *proportionate share of money in the flood area school and road fund that was produced by leases on land acquired by the United States for flood control purposes within the school district, county, or other political subdivision.* The school district, county, or other political subdivision is entitled to a proportionate part of the money in the fund based on the ratio that the district's, county's, or subdivision's tax rate bears to the sum of the school tax rate and the road tax rate. The money may be used for the purposes permitted by federal law.

*Id.* § 403.101(a), (b), (c) (emphasis added). The statutory predecessor of section 403.101(article 4366a of the Revised Civil Statutes) was adopted by the same legislature that adopted the predecessor to section 130.906. *See* Act of May 22, 1945, 49th Leg., R.S., ch. 250, 1945 Tex. Gen. Laws 387 (article 4366a); Act of Mar. 1, 1945, 49th Leg., R.S., ch. 19, § 1, 1945 Tex. Gen. Laws 29 (article 2351b-4).

Furthermore, we note that our construction of section 130.906 is consistent with the controlling judicial construction of its statutory predecessor. Prior judicial and attorney general opinions concluded that "area in said districts" for the purposes of allocation and distribution of the national forest revenues in the predecessor to section 130.906, former article 2351b-4 of the Revised Civil Statutes, referred to area of a school district rather than area of a national forest in the school district. *See Trinity Indep. Sch. Dist. v. Walker County*, 287 S.W.2d 717 (Tex. Civ. App.–Galveston 1956, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. V-93 (1947).

In *Trinity Independent School District v. Walker County*, the court rejected the contention that only school districts containing national forest land were entitled to a share of the federal revenues because the payments were in lieu of taxes lost to counties and school districts in which the tax-exempt national forest lands were located. *See Trinity*, 287 S.W.2d at 720-722; *see also Georgia Pac. Corp. v. County of Mendocino*, 357 F. Supp. 380, 388-89 (N.D. Cal. 1973) (and cases cited therein) (agreeing with *Trinity* court's interpretation of the federal law and rejecting contention that federal national forest revenues are payments in lieu of taxes); *Eminence R-1 Sch. Dist.*, 635 S.W.2d at 12 (federal statute cannot be viewed strictly as in lieu of tax provision, Congress intended to aid generally schools and roads upon which impact of federal presence falls most heavily). The *Trinity* court first determined that the federal law, 16 U.S.C. § 500, "evidences no intention on the part of Congress to make payments in lieu of taxes, but rather a friendly purpose to create trusts for the benefit of counties in which national forests are located in recognition of the national interest in education and road building" and "that the county as an entirety is the beneficiary of the trust" *Id.* at 722. But more importantly, setting aside the "foregoing considerations," the court concluded that based on the plain language of former article 2351b-4, all the public schools of the county or

counties in which a national forest is situated are beneficiaries of the federal funds under article 2351b-4, see *id.* at 722-725, stating:

> When the language alone of the statute is looked to, and there is no indulgence in speculation as to the possible meaning of what we consider a clear, literal expression of the legislative intent, there would appear to be no reasonable grounds for finding any ambiguity in the statute, nor for ascribing to the Legislature an intent to exclude from the benefit of the Federal fund any school district 'of the county or counties,' that is to say, to segment a county on the basis of the presence in various school districts of the Federal forest lands. . . . It is the presence in the county of the national forest lands which is the determinative factor, not the presence of such lands in a particular school district . . . ."

*Id.* at 725. It follows that if presence of a national forest in a school district is unnecessary, "area" for the purposes of allocating the federal revenues cannot refer to the area of the forest contained in the school district.

The *Trinity* court also approved Attorney General Opinion V-93, a 1947 opinion of this office construing former article 2351b-4 to apply to all school districts in the county receiving the federal funds and construing "area in said districts" to refer to the total area of a school district within the county. *See Trinity,* 287 S.W.2d at 725-26. Attorney General Opinion V-93 advised that:

> [N]ational forest receipts received by the county by virtue of the provisions of Title 16, Chapter 2, Section 500, U.S.C.A., and Article 2351b-4 [of the Revised Civil Statutes], for public school purposes should be prorated and transferred by the Commissioners Court to all the school districts within the county in proportion to the area in said school district; further, *that the term "area" as used in Article 2351b-4, means area of the school districts located in the county, and does not mean area of national forest lands.*

Tex. Att'y Gen. Op. No. V-93 (1947) at 2 (emphasis added); *see also Trinity,* 287 S.W.2d at 726.

The *Trinity* court rejected Attorney General Opinion S-121, a 1954 opinion of this office that overruled Attorney General Opinion V-93 and concluded that national forest revenues should be allocated to school districts based on the national forest area contained in each district. *See Trinity,* 287 S.W.2d at 726; Tex. Att'y Gen. Op. No. S-121 (1954) at 2. Attorney General Opinion S-121 premised its conclusion on the assumption that Congress and the legislature intended to provide the national forest revenues in lieu of taxes. *See Trinity,* 287 S.W.2d at 726; Tex. Att'y Gen. Op. No.

S-121 (1954) at 2. The *Trinity* court concluded that "such assumption is the sole basis upon which the opinion rests" and "[o]ur study [of the federal law] convinces us that the assumption is incorrect and we feel the earlier and more nearly contemporaneous [Attorney General Opinion V-93's] construction to be on firmer ground . . . ." *Trinity*, 287 S.W.2d at 726. Thus, Attorney General Opinion S-121 (1954) has been judicially disapproved, and we therefore overrule it.

Finally, we note that since *Trinity*, Congress amended 16 U.S.C. § 500 in 1976, but in doing so, it did not direct the allocation of the federal revenues or affect the validity of *Trinity*'s state law analysis. The amendment is some indication that the national forest revenues are provided in lieu of taxes.[2] *See* Act of Oct. 22, 1976, Pub. L. No. 94-588, § 16, 90 Stat. 2949. However, the manner in which the federal revenues are to be allocated between public roads and public schools or among school districts, is left to the discretion of the state legislature. *See* 16 U.S.C. § 500 (1994). Other courts and state attorneys general considering the same question after 1976 have reached the same conclusion. *See Eminence R-1 Sch. Dist. v. Hodge*, 635 S.W.2d at 12 (federal provision allows state to distribute forest reserve funds in any manner as long as specified purposes of benefitting public schools and roads of counties in which national forests are situated are met); Ariz. Att'y Gen. Op. No. I89-032 (1989) 1989 WL 266960 (disproportionate amount of forest reserve funds may be allocated between public schools and public roads so long as both categories receive benefit and state statute does not limit funds to school districts in which forest reserves are located). The *Trinity* court's construction of the predecessor to section 130.906, while informed by the court's interpretation of the federal law that the federal payments were not in lieu of taxes, was not premised on this interpretation. Rather, the *Trinity* court determined that the Texas Legislature did not intend to restrict allocation of the federal funds to school districts containing national forest lands based on the plain language of the statute. *See Trinity*, 287 S.W.2d at 725-26.

In sum, the phrase "area encompassed" by a school district in section 130.906 of the Local Government Code refers to the total area of a school district in the county. This construction is not only plain from the statute's face but is also consistent with the judicial construction of the statute's predecessor.

---

[2] The 1976 amendment states that: "The Secretary of Agriculture shall . . . make available to the States his current projections of revenues and payments estimated to be made under the Act of May 23, 1908, as amended, or any other special Acts making *payments in lieu of taxes*, for their use for local budget planning purposes." 16 U. S.C. § 500 (1994) (emphasis added).

### S U M M A R Y

"Area encompassed" by a school district under section 130.906 of the Local Government Code for the purposes of allocation of national forest revenues refers to the total area of a school district in the county.

Attorney General Opinion S-121 (1954) has been judicially disapproved, and it is overruled.

Your very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee